**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

BASSIR BAYAT, individually and
as assignee of others,

      Plaintiffs,

vs.                                                                CASE NO. 3:25-CV-1085

SULTAN BAYAT, PATONIA
BAYAT, MOHAMMAD BAYAT,
ALI BAYAT, SAMAY BAYAT, AL
WASAY BAYAT, individually, and
TAYAB REAL ESTATE CO. LTD., a
New York corporation,

      Defendants.

_____/

**<u>VERIFIED FIRST AMENDED COMPLAINT</u>**

      Bassir Bayat, individually and as assignee of others ("Plaintiff" or "Plaintiff

Bassir"), by and through undersigned counsel, files this First Amended Complaint

against Defendants Sultan Bayat ("Defendant Sultan"), Patonia Bayat ("Defendant

Patonia"), Mohammad Bayat ("Defendant Mohammad"), Ali Bayat ("Defendant

Ali"), Samay Bayat ("Defendant Samay"), Al Wasay Bayat ("Defendant Al Wasay")

(collectively, the "Individual Defendants"), and Tayab Real Estate Co. Ltd.

("Defendant Tayab" or the "Entity Defendant") (collectively with the Individual

Defendants, "Defendants"), alleges as follows. To the extent deemed to be

inconsistent all allegations and claims are pled in the alternative:

## NATURE OF THE CASE

1.      This action arises from a longstanding family arrangement concerning valuable real property located at 1437 Second Avenue, New York City, New York 10021, in Manhattan (the "Property"), originally acquired by Amir Khan Aga Bayat ("Khan Aga") for the benefit of all his children. Plaintiff Bassir Bayat, brings this action individually and as assignee of other siblings (together with Plaintiff, the "Siblings"), against Sultan Bayat, his immediate family, and related entities, seeking redress for a breach of trust, misappropriation of assets, and a conspiracy to deprive the Siblings of their rightful interests in the Property and/or Tayab Real Estate Co. Ltd.

2.      At the heart of this dispute is the orally entered contractual agreement that Defendant Sultan Bayat would manage the Property as a fiduciary for the benefit of all Siblings, honoring the wishes of their father, their collective ownership and agreement, and ensuring equitable distribution of profits and proceeds (the "Contract"). For many years, this contractual agreement functioned as intended, with Defendant Sultan overseeing the Property and distributing proceeds, including those from the sale of air rights, in accordance with the agreed-upon shares.

3.      However, Defendant Sultan has breached the Contract, his relationship of trust and confidence, and his fiduciary duties owed to Plaintiff and the Siblings, all with the aid and assistance of his co-defendants. Plaintiff alleges that, through a series of deceptive acts and omissions, including those directed into

Florida, Defendant Sultan and his co-defendants have converted the Property and its profits to their own use, systematically excluding the Siblings from information, access, and distributions to which they are entitled. The complaint details a pattern of obstruction, concealment, and pretextual justifications—culminating in the isolation of Defendant Sultan from the Siblings in a pretextual, or actual, effort to obscure the full extent of past and continuing breaches of fundamental duties and trust, and the ongoing harm to the Siblings.

4.  Defendant Sultan's misconduct, and his co-defendants' misconduct, as further alleged herein, amount not only a breach of fiduciary duty and a breach of the underlying Contract, but illustrate the conspiracy to conceal wrongdoing, misappropriate assets, and exploit pretextually or otherwise Defendant Sultan's declining health or unavailability. As a result, the Siblings have been denied their rightful interests and have suffered significant financial and emotional harm.

5.  This case seeks judicial intervention to restore the Siblings' rights, compel an accounting, enjoin further dissipation of assets, and provide all other relief deemed just and proper under the circumstances.

**PARTIES**

6.  Plaintiff Bassir Bayat is an individual residing in St. Johns County, Florida, and is a citizen of the State of Florida. He is one of the children of Amir Khan Aga Bayat and brings this action individually and as assignee of claims held by other children of Khan Aga (the "Siblings"). Certain other Siblings are citizens

3

of Florida, Texas and of New Jersey. Plaintiff is a dual citizen of Afghanistan and the United States.

7.      In addition to Plaintiff Bassir, the Siblings referenced herein are the other children of Amir Khan Aga Bayat, whose claims have been assigned to Plaintiff for purposes of this action. The Siblings include, but are not limited to: Farid Bayat, Nassir Bayat, Arifa Rahin, Ehsanollah Bayat, and Ruhullah Bayat. Each is a dual citizen of Afghanistan and the United States.

8.      Defendant Sultan Bayat is an individual residing at 574 Mill Run, Paramus, New Jersey 07652, and is a citizen of the State of New Jersey. He is a son of Khan Aga and, upon information and belief, at all relevant times, served on behalf of the Siblings as the President, Chairman, and principal shareholder of Defendant Tayab Real Estate Co., Ltd., which upon information and belief is an alter ego of Defendant Sultan. Defendant Sultan is a dual citizen of Afghanistan and the United States.

9.      Defendant Tayab Real Estate Co., Ltd. is, upon information and belief, a New York corporation with its last known principal place of business in New York, New York, and its registered agent for service: Sultan Bayat, 770 Pascack Road, Paramus, New Jersey, United States 07652. Defendant Tayab is believed to hold legal title to the Property at issue in this action, and to be managed and controlled by, and an alter ego of, Defendant Sultan and/or his immediate family for the benefit of the Siblings.

10. Defendant Patonia Bayat is an individual residing at 574 Mill Run, Paramus, New Jersey 07652, and is the wife of Sultan Bayat. She is a citizen of the State of New Jersey.

11. Defendant Mohammad "Matthew" Bayat is an individual residing at 574 Mill Run, Paramus, New Jersey 07652, and is the adult son of Sultan Bayat. He is a citizen of the State of New Jersey.

12. Defendant Ali Bayat is an individual residing at 574 Mill Run, Paramus, New Jersey 07652, and is the adult son of Sultan Bayat. He is a citizen of the State of New Jersey.

13. Defendant Samay Bayat is an individual residing at 574 Mill Run, Paramus, New Jersey 07652, and is the adult son of Sultan Bayat. He is a citizen of the State of New Jersey.

14. Defendant Al Wasay Bayat is an individual residing at 574 Mill Run, Paramus, New Jersey 07652, and is the adult son of Sultan Bayat. He is a citizen of the State of New Jersey.

15. Each of the individual Defendants may be served with process at 574 Mill Run, Paramus, New Jersey 07652, or at such other address as may be ascertained through discovery.

16. At all times relevant, Defendants Sultan Bayat, Patonia Bayat, Mohammad Bayat, Ali Bayat, Samay Bayat, and Al Wasay Bayat, and Tayab, acted individually and/or in concert, and as agents, co-conspirators, or representatives

5

of one another and of the Entity Defendant, in connection with the acts and omissions alleged herein.

## **JURISDICTION AND VENUE**

17. This Court has subject-matter jurisdiction over this matter under Fla. Const. Art. 5, § 5 and Fla. Stat. §26.012(2) because this is a civil action, and the amount in controversy exceeds $30,000.

18. This Court has personal jurisdiction over the Defendants because many of the acts giving rise to this Action occurred in Florida and because each of the Defendants, individually, and/or through their agents, co-conspirators, or representatives, purposefully reached into the Florida market to conduct ongoing business with, make false and misleading representations to, and provide services to or on behalf of Plaintiff and the Siblings.

19. Pursuant to Fla. Stat. § 48.193(1)(a)(2), this Court also has personal jurisdiction over the Defendants because each of them individually, and/or through their agents, co-conspirators, or representatives, purposefully committed a tortious act in this state as fully detailed herein, to include but not limited to, making false statements of fact in Florida for the purposes of bringing about their fraud, the subject of Counts I, V, VI, and VIII, and repeatedly directed and/or committed overt acts in furtherance of their Civil Conspiracy as alleged in Count X.

20. Pursuant to Fla. Stat. § 48.13(a)(7), this Court also has jurisdiction over both Defendants Sultan and Tayab because each "breached a contract in this

6

state by failing to perform acts required by the contract to be performed in this state."

21.     Venue is proper in this Court under Fla. Stat. § 47.011 because the causes of action accrued in St. Johns County, Florida, including because the Defendants committed one or more of the tortious acts and breaches detailed herein in St. Johns County, Florida.

## FACTUAL ALLEGATIONS

### Amir Khan Aga Bayat's Legacy to Plaintiff and the Siblings

22.     Khan Aga, the patriarch of the Bayat family, was an Afghan national, who fled to the United States when Russia invaded Afghanistan. His story is a classic success story of an immigrant thriving in a free society.

23.     Among other things, Khan Aga acquired the Property at the center of this dispute, and the subject of the Contract entered into between the Plaintiff, the Siblings and Defendant Sultan and in it founded a Manhattan restaurant where many of Khan Aga's children worked over the years. The Property was acquired with the express intention, and with the agreement between the Siblings, that it would serve as a lasting asset for the benefit of all of Khan Aga's children, including Plaintiff Bassir, the Siblings, and Defendant Sultan—as set forth by the well-understood terms of the Contract.

24.     To facilitate the management and preservation of the Property, the Siblings entrusted Defendant Sultan, the eldest of Khan Aga's sons, with the responsibility of overseeing the Property's operations, finances, and

7

administration. This arrangement adhered to Afghan social norms, in which the family's collective interests are paramount over the individual, and in which the collective financial wellbeing and security of the family is regularly entrusted to the eldest male heir.[1]

25.     In furtherance of the Contract, Tayab Real Estate Co., Ltd. was established, which, upon information and belief, holds legal title to the Property. Plaintiff and the Siblings, in accordance with the Contract, designated Defendant Sultan as the President and Chairman of this entity, wherein it was agreed he would continue acting in a fiduciary capacity for the benefit of all Siblings.

26.     Defendant Sultan's contractual obligations and fiduciary duties were regularly reaffirmed and ratified by Defendant Sultan and the Siblings, including at family meetings. Siblings, including Plaintiff's sister, Rahin, and brother, Nassir, specifically recall one such meeting, where Khan Aga, seated on the floor of his living room, confirmed to the Siblings that the building was for the benefit of all the Siblings, and Defendant Sultan did in fact, on prior occasions, represent to Plaintiff and Siblings his status as a fiduciary, for the purpose of managing the Property for the Plaintiff's and Siblings' benefit.

27.     Defendant Sultan did in fact, at the meeting and on other occasions, represent to the Plaintiff and Siblings that he would preserve the Property as an

---

[1] *See, e.g.*, Cultural Atlas, *Afghan Culture: Family, Household Structure*, available at: https://culturalatlas.sbs.com.au/afghan-culture/afghan-culture-family (last accessed July 24, 2025).

asset for Plaintiff's and the Siblings' benefit and preserve their respective shares in it and proceeds derived therefrom.

28.    The Contract entered between the parties set forth their respective shares in the Property in unambiguous terms as follows: Farid Bayat (2/13), Sultan Bayat (2/13), Nassir Bayat (2/13), Arifa Rahin (1/13), Bassir Bayat (2/13), Ehsanollah Bayat (2/13), and Ruhullah Bayat (2/13).

29.    The Plaintiff and Siblings were reliant upon Defendant Sultan to execute his fiduciary duties as agreed upon. Defendant Sultan was obligated to manage the Property not for his own exclusive benefit, but as a fiduciary of Plaintiff and Siblings and as a steward for the collective interests of the family. Defendant Sultan, however, in furtherance of his misconduct, falsely assured the Plaintiff and the Siblings that their respective shares in the Property and/or Tayab were secure, that profits and proceeds would be distributed equitably, and that he would act transparently and in good faith in all matters relating to the Property and Tayab.

**Sultan Bayat's Management of the Property**

30.    For many years following the initial arrangement, the management of the Property by Defendant Sultan proceeded in accordance with the Siblings' collective understanding and expectations. Defendant Sultan, acting as the principal or agent of Defendant Tayab, and consistent with his contractual and fiduciary responsibilities oversaw the day-to-day operations, maintenance, and financial administration of the Property. During this period, the Siblings worked collaboratively, each contributing labor, resources, or expertise to enhance the

9

value and success of the family asset. Over the last ten years, Defendant Sultan individually, and in conjunction with his co-conspirators, has repeatedly ratified his contractual and fiduciary obligations to Plaintiff and the Siblings.

31.     Each of the Siblings, including Plaintiff and Defendant Sultan, worked at or on behalf of the restaurant or with the Property at various times. Profits from the restaurant and rental payments from third-party tenants of the Property helped to pay off the mortgage on the Property and build equity therein for the mutual benefit of the Siblings. All of the Siblings' work was with the expectation that these profits would be preserved and shared periodically and eventually when the Property was sold. It was a close family, and, in keeping with their values, each Sibling contributed to enhance the value of the asset and secure the family's collective investment. In reliance on the status of the Property as a shared family asset for collective benefit, Siblings including Farid, Bassir, and Ehsanollah worked in the restaurant for little to no pay with the express understanding and expectation that their contributed labor or "sweat equity" was being provided to enhance the value of this asset for all of their mutual benefit.

32.     Pursuant to the Contract and undertaking, in return for overseeing day-to-day management of the Property for the Siblings' benefit, Defendant Sultan received various monthly subsidies, reimbursement of expenses, access to resources and support, and various other payments and benefits, including those deriving from Florida, from the non-managing Siblings. He was also entrusted with ensuring maintenance on the Property and given leeway to incur expenses

10

related to same, many of which were shared among the Siblings or understood to be deducted from profits otherwise belonging to the Siblings.

33. A defining moment in this period of proper management, which confirms the terms and existence of the Contract and undertaking, was the sale of air rights associated with the Property. In or around 2006, these air rights were sold, resulting in a substantial net gain for the family.

34. The proceeds from this transaction—approximately $2,351,000— were distributed among the Siblings in accordance with their agreed-upon shares. Each Sibling received a direct payment, and additional funds were allocated to assist with individual mortgage obligations. These distributions were made transparently, with Defendant Sultan providing assurances and documentation regarding the amounts and the basis for allocation.

35. Defendant Sultan continued to receive benefits, including those deriving from Florida Siblings and related entities, with whom he regularly interacted, long after the distribution of air rights proceeds. Defendant Sultan's Siblings provided these benefits because Defendant Sultan agreed to act, and was understood to be acting, as a steward of the Siblings' collective asset, and they would not otherwise have provided them.

36. Communications with one or more of the Siblings have taken place in Florida, including periodic updates concerning the status of the Property and related proceeds.

37.   Throughout this time, Defendant Sultan maintained regular communication with the Siblings, both in person and through various forms of correspondence. He consistently reaffirmed his contractual obligation and fiduciary duty to manage the Property for the benefit of all, providing updates on financial matters and responding to inquiries about the status of the investment. The Siblings relied on these representations, and the pattern of equitable profit sharing reinforced their trust in Defendant Sultan's stewardship and intent to perform under the terms of the Contract.

38.   This period was marked by mutual confidence, transparency, and a shared sense of purpose. The Siblings' expectations of ongoing benefit and accountability were validated by Defendant Sultan's actions, and the family's collective investment in the Property appeared secure and well-managed.

## Sultan Bayat's Ongoing Assurances of Stewardship

39.   Throughout the period following the initial arrangement, Defendant Sultan made repeated and specific assurances to the Siblings that he was managing the Property for their collective benefit, reinforcing their reliance on his stewardship and the expectation of equitable treatment.

40.   On multiple occasions, Defendant Sultan traveled to Florida to meet with Plaintiff Bassir and other Siblings. During these in-person visits, Defendant Sultan discussed the status of the Property and expressly reassured Plaintiff and another Sibling that "everyone will be taken care of and get their share of the building." Plaintiff and the Siblings now recognize that these status updates, in

Florida, were part-and-parcel of Defendant Sultan's and his co-defendants' then existing civil conspiracy to tender false assurances, so the Defendants could surreptitiously profit from the Property in contravention of the Contract.

41.   During Defendant Sultan's Florida updates, he would repeatedly represent to Plaintiff and other Siblings that future distributions would be made in the same manner as the prior distribution of proceeds from the sale of air rights, and that each Sibling's ownership interest remained secure, in accordance with the Contract and undertaking.

42.   These assurances were made both during in-person meetings in Florida and through communications by telephone, email, and text directed into Florida.

43.   Following the COVID-19 pandemic, Defendant Sultan again traveled into Florida and met with Plaintiff and Plaintiff's Siblings, Rahin (sister) and Ehsanollah Bayat (brother), at the home of Rahin to tender further false assurances. During this gathering, Defendant Sultan reiterated false claims that he continued to manage the Property for the benefit of all Siblings, assuring them that profits from the Property were being used solely to maintain and protect the family investment, and that the ownership percentages remained unchanged from those used in the prior air rights distribution.

44.   Defendant Sultan also had a separate conversation with Plaintiff's brother, Farid Bayat, regarding the rental income generated from the space formerly occupied by the family restaurant. Farid, concerned about his future and

the security of the family asset, questioned Defendant Sultan about the status of the Property and the safeguarding of accumulated profits.   Defendant Sultan confirmed that their father had acquired the Property for the benefit of all Siblings and that he was preserving the profits for their collective benefit. He further assured Farid that distributions would resume in the same proportions as the air rights proceeds, with the principal to be distributed upon the eventual sale of the Property.

45.    These repeated assurances—delivered in person, during family gatherings, and through various forms of communication—were central to the Siblings' continued trust in Defendant Sultan's management. The Siblings relied on these representations in foregoing further inquiry, contributing labor and resources to the Property, providing benefits and subsidies to Defendant Sultan, and deferring to Defendant Sultan's authority regarding the administration and distribution of profits. The context of prior transparent distributions, particularly from the sale of air rights, further solidified the Siblings' belief that Defendant Sultan was acting in their best interests and that their ownership interests were secure.

## When 'Theirs' Became 'His'

46.    The longstanding arrangement among the Siblings began to show signs of unraveling when troubling information surfaced regarding the management and use of the Property. The first clear sign of breach emerged when Defendant Mohammad Bayat, son of Defendant Sultan, communicated to several

14

of the Siblings that the Property was being treated as the personal asset of Defendant Sultan's immediate family. Defendant Mohammad's statements revealed, for the first time, that Defendant Sultan's family—including his wife and children—were asserting exclusive ownership over the Property and had been utilizing its profits for their own benefit, to the exclusion of the other Siblings.

47.    Upon information and belief, Defendant Mohammad, who also goes by "Matthew," has held, and continues to hold, himself out as an employee and agent of Defendant Tayab with the full consent and authorization of Defendants Sultan and Tayab. For example, a LinkedIn profile believed to belong to Defendant Mohammad lists his employment with Tayab Real Estate for a period of at least nine years:



48.    Defendant Mohammad's revelation was both unexpected and alarming, given the history of transparency and equitable distributions that had characterized the prior management of the Property. The Siblings, who had relied

---

[2]https://www.linkedin.com/in/matthew-b-0843061b9/, last accessed 10/20/2025. While the profile refers to "Tayab Real Estate LLC," upon information and belief this refers to Defendant Tayab as there is no Tayab Real Estate, LLC registered with the New York Secretary of State.

on Defendant Sultan's repeated assurances regarding their continued ownership interests and the preservation of their shares, were confronted with the reality that the Property's income and assets were, upon information and belief, being diverted for the personal use of Defendant Sultan's family, casting into doubt the extent to which, potentially for years, the Siblings had been deprived of distributions, proceeds, and other benefits of the Property, contrary to Defendant Sultan's numerous express assurances.

49.     Defendant Mohammad's communications included explicit warnings that any attempt by the Siblings to reclaim their interests or inquire further into the management of the Property would be met with resistance, and even threats.

50.     The Siblings' initial shock was compounded by the abrupt change in access to information and the sudden shift in the family dynamic. Where previously there had been open communication and regular updates, the Siblings now faced stonewalling and evasiveness from Defendant Sultan and his immediate family. The contrast between Defendant Sultan's longstanding representations and the new assertions by his son Mohammad indicated a fundamental breach of the fiduciary relationship and signaled a broader pattern of misappropriation and concealment.

51.     These first indications of breach set in motion a series of events that would ultimately reveal a deeper scheme to deprive the Siblings of their rightful interests in the Property, and to convert the family asset into the exclusive domain of Defendant Sultan's immediate family.

16

## Anatomy of an Egregious Breach of Trust

52.    Following the alarming disclosures by Mohammad Bayat regarding the use of the Property and its profits, the Siblings undertook concerted efforts to obtain information and documentation concerning the management and financial status of the Property. These efforts were met with persistent and deliberate obstruction by Defendant Sultan's immediate family.

53.    The Siblings requested access to financial records, accountings, and other documents necessary to verify their interests and to understand the disposition of income generated by the Property. Repeated inquiries—made through direct communication, written requests, and attempts to arrange meetings—were either ignored or met with evasive responses. Where previously Defendant Sultan had provided regular updates and assurances, the Siblings now encountered silence or deflection from his wife and children.

54.    After years of providing regular updates, Defendant Sultan abruptly ceased responding to repeated requests from Plaintiff Bassir and other Siblings for access to books, records, and accountings related to the Property. Despite direct inquiries, Defendant Sultan either failed to respond or provided only vague, noncommittal answers that did not address the Siblings' concerns or requests for transparency. This pattern of non-responsiveness escalated as the Siblings increased their efforts to obtain information about the Property.

55.    Upon information and belief, the Property has continuously generated profits and other proceeds, including during the period after the

17

distribution of the proceeds from the 2006 sale of air rights. For example, Google searches reveal that the ground floor of the Property is occupied by a commercial tenant operating a seafood and butcher shop doing business as Leonard's Seafood and Prime Meats ("Leonard's"):

[3]

56.     The Google Business Profile for Leonard's contains photographs of the business operating out of the Property dating back at least two years:

---

[3] Google Business Profile result for "Leonard's Market New York," last accessed 10/14/2025.



57.    The Yelp profile for Leonard's at the Property includes reviews dating back until at least 2011:



58.    Upon information and belief, Leonard's and possibly other commercial businesses, operate from the Property pursuant to commercial leases under which they pay rents to Tayab and/or Defendant Sultan and his family.

---

[4] *Id.*

19

59.    Prior to Leonard's operation at the Property, upon information and belief, an ice cream parlor operating under the name Maggie Moo's was a commercial tenant of the Property and paid rents to Tayab and/or Defendant Sultan and his family.

60.    Publicly available rental information shows multiple residential apartments listed for rent at various times at the Property, and upon information and belief, several residential units are situated on the second through fourth floors of the Property.

61.    For example, the popular rental website StreetEasy includes information showing at least four units, all currently off-market, and upon information and belief, rented to paying tenants, that were listed for per-unit monthly rents ranging from $2,195 to $3,695, dating back until at least 2011:



| OFF-MARKET DATE ▼ | UNIT ⇕ | BASE RENT ⇕ | BEDS ⇕ | BATHS ⇕ | SIZE ⇕ | FLOOR PLAN |
|---|---|---|---|---|---|---|
| 06/28/24 | #2B | $2,780 | 1 bed | 1 bath | - ft² | - |
| 01/21/24 | #3A | $2,650 | 1 bed | 1 bath | - ft² | - |
| 11/19/20 | #B2 | $2,295 | 1 bed | 1 bath | - ft² | - |
| 12/10/19 | #1B | $2,495 | 1 bed | 1 bath | - ft² | - |
| 10/08/17 | #1A | $2,195 | 1 bed | 1 bath | - ft² | - |
| 08/10/11 | #4 | $3,695 | 3 beds | 1 bath | - ft² | - |

[5]

62.    Upon information and belief, multiple residential units at the

---

[5] *1437 2nd Avenue in Lenox Hill: Sales, Rentals, Floorplans,* StreetEasy, https://streeteasy.com/building/1437-2-avenue-new_york (last accessed 10/14/2025).

Property are currently rented to residential tenants who are paying rent to Tayab and/or Defendant Sultan and his family to occupy the units.

63.  Upon information and belief, Defendants Tayab, Sultan and/or his family have continuously received commercial and residential rental income streams from the Property dating back at least until 2011, but have appropriated such rental income streams to their personal purposes and have never shared, and indeed have refused to share, any such rental income streams with the Siblings or provided an accounting of same.

64.  In addition to Defendant Sultan withholding information, Defendant Sultan's family began to restrict access to Defendant Sultan himself. The Siblings were denied opportunities to meet with him, both in person and by telephone, under the pretext that he was unavailable, unwell, or otherwise unable to communicate. These justifications were provided without supporting details and were inconsistent with prior patterns of open family interaction.

65.  Specifically, Defendant Patonia, Defendant Sultan's wife, repeatedly refused to allow the Siblings to visit or speak with Defendant Sultan, citing vague or shifting reasons for his unavailability, such as illness or unspecified personal matters. Defendant Patonia acted as a gatekeeper, intercepting calls and visits, and preventing any direct communication between Defendant Sultan and the Siblings, particularly when inquiries about the Property intensified.

66.  On at least one occasion, Defendant Patonia escalated matters by calling the police on a Sibling who attempted to visit Sultan at the family home,

further intimidating the Siblings and discouraging further inquiry.

67.    The abrupt and unexplained isolation of Defendant Sultan raised serious concerns among the Siblings regarding his well-being and the true motivations behind his seclusion. The denial of access to both information and to Defendant Sultan was accompanied by further acts of concealment. Requests for an accounting of rents, expenses, and distributions were stonewalled. Books and records pertaining to the Property were withheld, and the Siblings' attempts to clarify the status of their interests were met with hostility or threats of reprisal. In some instances, members of Defendant Sultan's family made statements designed to intimidate the Siblings or to discourage further inquiry, including threats of legal action or public disparagement. Upon information and belief, Defendant Sultan's co-defendants have the ability to access such records and information.

68.    Over time, Defendant Patonia's efforts at obstruction grew into a campaign of disparagement against Siblings who persisted in seeking information. On several occasions, she published falsehoods and accusations of wrongdoing against Siblings who sought information. Defendant Patonia went as far as to accuse such Siblings of witchcraft, a vicious slander in the Afghan community that has been known to result in acts of violence and to expose those accused to grave, life-threatening harm in their home country.[6]

---

[6] *See* EFE.com, *Taliban arrest hundreds on allegations of performing witchcraft*, available at: https://efe.com/en/other-news/2023-10-06/taliban-arrest-hundreds-on-allegations-of-performing-witchcraft-2/ (last accessed July 24, 2025).

69.    The threat in Defendant Patonia's actions was clear: "I will jeopardize your safety and that of your family if you don't drop this."

70.    Defendant Mohammad, Defendant Sultan's adult son, directly threatened a Sibling, warning that if the Siblings attempted to "take back" the Property or assert any rights to the profits, there would be consequences. Defendant Mohammad made clear that Defendant Sultan's immediate family— including his adult children—now considered the Property their own and had been living off its profits for years. These threats were intended to intimidate the Siblings and deter them from further inquiry or legal action. Sultan and each member of his family are acting as co-conspirators, or as one another's agents, to convert property belonging to Plaintiff and the Siblings to their own use.

71.    In addition to issuing threats, Defendant Mohammad refused to provide any information or documentation regarding the Property's finances or operations, despite holding himself out as an agent of Tayab, and, upon information and belief, having access to such information and documentation. When approached by Siblings seeking clarification or records, Defendant Mohammad either stonewalled or redirected inquiries, asserting that the family had no obligation to share such information. Upon information and belief, Defendant Mohammad's threats and obfuscation were intended to prolong the cash-cow revenue from the Property that has been subsidizing his lifestyle since he has achieved no other financial independence. Along the way, Defendant Mohammad fraudulently induced one more Siblings to pay for certain of his

23

personal expenses, all while he continued to embezzle funds and other assets properly belonging to the Siblings.

72.    Defendant Sultan's other adult sons—Defendants Ali, Samay, and Al Wasay—participated in denying the Siblings access to Defendant Sultan and refused to provide any information or documentation when approached. Requests for an accounting or inspection of books and records were met with silence or outright refusal from these individuals, with no legitimate justification offered. Upon information and belief, Defendant Sultan's children have no other means of support other than monies directly or indirectly siphoned from assets belonging to the Siblings.

73.    These actions, taken together, suggest a coordinated effort by Defendant Sultan's immediate family to prevent the Siblings from uncovering the true state of the Property and the disposition of its assets. Whether acting in concert with Defendant Sultan using alleged health concerns as pretext or exploiting Defendant Sultan's true diminished capacity, his wife and children—Defendants Patonia, Mohammad, Ali, Samay, and Al Wasay—have erected barriers to transparency and accountability, effectively insulating themselves from scrutiny and perpetuating the deprivation of the Siblings' rights.

74.    The Siblings' inability to obtain basic information about the Property, coupled with the pretextual and shifting explanations for Defendant Sultan's unavailability to respond to basic information requests, has left them with no alternative but to seek judicial intervention. The pattern of obstruction and

24

concealment described herein forms reflects and forms a central part of the alleged conspiracy or scheme to misappropriate the Property and its profits, and underscores the urgent need for equitable relief to protect the Siblings' interests.

## Current Status and Ongoing Efforts

75.    In the wake of persistent obstruction and concealment by Defendant Sultan's immediate family, the Siblings have undertaken sustained and diligent efforts to uncover the truth regarding the management and disposition of the Property and its assets. These efforts have included repeated requests for access to financial records, demands for an accounting of income and expenses, and attempts to communicate directly with Defendant Sultan to clarify the status of their collective interests.

76.    Despite these efforts, the Siblings have been systematically denied meaningful information or participation in the management of the Property. Communications directed to Defendant Sultan have been intercepted or ignored, with his wife and children providing only vague or contradictory explanations for his unavailability. Requests for books, records, and accountings have been met with silence, evasion, or outright refusal. The Siblings' attempts to arrange meetings or obtain documentation have been frustrated at every turn, leaving them unable to verify the status of their interests or to assess the extent of any misappropriation.

77.    After decades of a course of dealing adhering to the original family arrangement, Defendants now deny that Plaintiff and the Siblings have any

25

financial interest in the Property.

78. Upon information and belief, the pattern of conduct described above has enabled Defendant Sultan's wife and children to divert profits and assets from the Property for their own personal use. Rental income, proceeds from prior transactions, and other revenues have been funneled to support the lifestyle of Defendant Sultan and/or that of his immediate family, with no transparency or accountability to the Siblings. Distributions that were once made equitably have ceased, and the Siblings' beneficial interests have been disregarded.

79. Defendant Sultan is complicit in the scheme to deprive the Siblings of their interests, and his wife and children have induced him to breach fiduciary duties and have tortiously interfered with his agreement with the Siblings, possibly exploiting his unwellness or incapacity to further their own interests. As a result, the Siblings have been systematically excluded from the benefits of the Property and denied the transparency and accountability to which they are entitled as a direct result of the actions and/or inactions of the Defendants, collectively, and profits from their respective interests have been diverted and converted by the Defendants.

80. The impact of this ongoing obstruction has been profound. The Siblings have been deprived not only of their rightful share of profits and distributions, which have been stolen, but also of the ability to protect their investment and to hold those in control accountable for their actions. The lack of transparency and accountability has created an environment of uncertainty,

mistrust, and financial insecurity, exacerbated by the apparent isolation of Defendant Sultan, whether pretextual or not, and the usurpation of his authority by his immediate family.

81.    Faced with these circumstances, the Siblings have no adequate remedy at law. The continued denial of access to information and the risk of further dissipation or concealment of assets threaten to cause irreparable harm to their interests. The Siblings' inability to obtain even the most basic records or assurances regarding the Property underscores the urgent need for judicial intervention.

82.    Accordingly, the Siblings now seek the protection of this Court to compel the production of records, to require a full accounting and reconciliation of all financial transactions related to the Property, and to enjoin any further transfer or dissipation of assets pending resolution of their claims. Only through such intervention can the Siblings hope to restore transparency, safeguard their interests, and prevent the continuation of the wrongful conduct described herein.

83.    The Siblings need to ensure that their rightful ownership of the Property remains intact as follows: Farid Bayat (2/13), Sultan Bayat (2/13), Nassir Bayat (2/13), Arifa Rahin (1/13), Bassir Bayat (2/13), Ehsanollah Bayat (2/13), and Ruhullah Bayat (2/13).

84.    The Siblings' ongoing efforts, and the persistent obstruction they have encountered, demonstrate both the seriousness of the alleged misconduct and the necessity for immediate and comprehensive relief to protect their rights and the

27

integrity of the family's shared legacy.

85.     The following causes of action are asserted by Plaintiff against Defendants. Plaintiff expressly reserves the right to amend, supplement, or otherwise modify these causes of action as additional facts are developed through discovery or otherwise.

86.     To the extent deemed inconsistent, all counts are pled in the alternative.

## COUNT ONE
### Violation of the Florida Deceptive and Unfair Trade Practices Act (FDUTPA),
### Fla. Stat. § 501.201, et seq.

87.     Plaintiff re-alleges and incorporates by reference paragraphs 22 through 86 as if fully set forth herein.

88.     Defendants Sultan, Patonia, Mohammad, Ali, Samay, Al Wasay Bayat, and Tayab have engaged in deceptive and unfair trade practices in violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201 et seq.

89.     The acts and omissions of Defendants, as described in detail above, constitute deceptive and unfair practices within the meaning of FDUTPA. These include, but are not limited to:

   a. Making repeated misrepresentations to Plaintiff and the Siblings regarding the management, ownership, and distribution of profits from the Property;

   b. Concealing and withholding material information about the Property's finances, operations, and the Siblings' interests;

   c. Stonewalling and refusing to provide access to books, records, and accountings, despite repeated requests;

28

d. Isolating Defendant Sultan from the Siblings and using pretextual justifications to prevent communication and inquiry;

e. Issuing threats and engaging in intimidation, including explicit warnings by Defendants Mohammad and Patonia that attempts to assert rights would result in adverse consequences;

f. Publishing false and malicious statements about Siblings who sought information, including calling law enforcement to deter further inquiry; and

g. Coordinating among family members to block access, withhold information, and perpetuate a scheme to misappropriate the Property and its profits for the exclusive benefit of Sultan's immediate family, which they have been using for personal purposes.

90.    The above-described acts and omissions occurred in the course of trade or commerce, as defined by FDUTPA, including because they occurred in connection with the management of the Property and had a direct effect in the State of Florida, including because they interfered with the flow of proceeds and information called for delivery into Florida. Defendants further directed myriad communications, misrepresentations, and distributions into Florida, and the harm to Plaintiff and the Siblings was suffered in Florida, where Plaintiff resides and where many of the relevant events and communications occurred.

91.    As a direct and proximate result of Defendants' deceptive and unfair trade practices, Plaintiff and the Siblings have suffered actual damages, including but not limited to, the loss of their rightful share of profits and distributions from the Property, deprivation of information necessary to protect their interests, and the costs and expenses incurred in seeking redress for Defendants' misconduct.

92.    Defendants have misrepresented the characteristics of Property

29

management and the interests of the Siblings to cheat the Siblings out of hundreds of thousands or even millions of dollars. Upon information and belief, Defendants' delay and concealment tactics have been intended in part to increase monthly subsidies they derive for alleged supervision, management, accounting administration, and similar overhead and fee expenses, among other reasons.

93.    Plaintiff is entitled to all remedies available under FDUTPA, including:

    a.  Actual damages in an amount to be proven at trial;

    b.  Statutory damages as permitted by law;

    c.  Reasonable attorneys' fees and costs;

    d.  Injunctive relief enjoining Defendants from further deceptive and unfair practices, requiring the production of all books and records, and prohibiting the transfer or dissipation of assets pending resolution of this action; and

    e.  Such other and further relief as the Court deems just and proper.

## COUNT TWO
### Breach of Fiduciary Duty and Aiding and Abetting Breach of Fiduciary Duty

94.    Plaintiff re-alleges and incorporates by reference paragraphs 22 through 86 as if fully set forth herein.

95.    Defendant Sultan owed Plaintiff and the Siblings a fiduciary duty as the managing member and principal of Tayab, the entity holding legal title to the Property, and as the individual entrusted by the Siblings to manage the Property and its proceeds for their collective benefit.

96.    This fiduciary relationship was established by express agreement,

repeated assurances, and the longstanding course of conduct in which Sultan undertook to act as a steward for the Siblings' interests, to manage the Property prudently, to account for all income and expenses, and to refrain from self-dealing or actions adverse to the Siblings' interests.

97. Sultan breached his fiduciary duties to Plaintiff and the Siblings by, among other things:

    a. Failing to provide full and accurate accountings of the Property's finances and operations;

    b. Withholding and concealing material information regarding the management, income, and expenses of the Property;

    c. Diverting profits and assets from the Property for the exclusive benefit of himself and his immediate family, to the exclusion of the Siblings;

    d. Failing to distribute profits and proceeds in accordance with the agreed-upon shares and prior practice;

    e. Refusing to respond to reasonable requests for information, documentation, and access to records;

    f. Permitting or enabling his immediate family to usurp his authority, isolate him from the Siblings, and obstruct the Siblings' efforts to protect their interests; and

    g. Engaging in self-dealing and misappropriation of assets held in trust for the Siblings.

98. Defendants Patonia, Mohammad, Ali, Samay, and Al Wasay (collectively, the "Aiding Defendants") had actual knowledge of Defendant Sultan's fiduciary duties to Plaintiff and the Siblings, and of his breaches thereof. The Aiding Defendants were aware of the Siblings' beneficial interests, the prior course of profit sharing, and the obligations Defendant Sultan undertook as managing member of Tayab.

99. The Aiding Defendants substantially assisted, induced, encouraged, and participated in Defendant Sultan's breaches of fiduciary duty by:

    a. Actively stonewalling and refusing to provide information or documentation to Plaintiff and the Siblings regarding the Property and its finances;

    b. Restricting and denying access to Sultan, intercepting communications, and providing pretextual or false explanations for his unavailability;

    c. Withholding books, records, and accountings, and refusing to allow inspection of the Property or relevant documents;

    d. Issuing threats and engaging in intimidation, including explicit warnings by Mohammad Bayat that any attempt to assert rights would result in adverse consequences;

    e. Publishing false and malicious statements about Siblings who sought information, including calling law enforcement to deter further inquiry; and

    f. Coordinating among themselves to block access, withhold information, and perpetuate a scheme to misappropriate the Property and its profits for their exclusive benefit.

100. The Aiding Defendants acted with conscious intent to induce, assist and encourage Sultan's breaches, and/or with reckless disregard for the Siblings' rights and a duty to disclose the ongoing breaches. Their conduct was not inadvertent or negligent, but deliberate and calculated to further the wrongful deprivation of the Siblings' interests.

101. As a direct and proximate result of the Aiding Defendants' substantial assistance, inducement and encouragement of Defendant Sultan's breaches, Plaintiff and the Siblings have suffered the damages described above, including loss of profits, deprivation of information, and the costs of seeking redress.

32

102.   Plaintiff is entitled to all remedies available for breach of fiduciary duty and aiding and abetting breach of fiduciary duty, including:

    a. Actual, incidental, and consequential damages in an amount to be proven at trial;

    b. Disgorgement and restitution of all profits and benefits wrongfully obtained by Defendants;

    c. Imposition of a constructive trust over the Property and its proceeds;

    d. Appointment of a receiver over the Property and Defendant Tayab

    e. An accounting and full disclosure of all financial transactions related to the Property;

    f. Injunctive relief enjoining further breaches and requiring the production of all books and records;

    g. Reasonable attorneys' fees and costs; and

    h. Such other and further relief as the Court deems just and proper.

**COUNT THREE**
**Conversion**

103.   Plaintiff re-alleges and incorporates by reference paragraphs 22 through 86 as if fully set forth herein.

104.   Plaintiff and the Siblings, as beneficial owners of the Property and its proceeds, have a right to possess and receive their respective shares of profits, distributions, and other assets derived from the Property, including but not limited to rental income, proceeds from the sale of air rights, and accumulated profits held or managed by Defendant Sultan and Defendant Tayab for their benefit.

105.   Defendants Sultan, Patonia, Mohammad, Ali, Samay, and Al Wasay, individually and in concert, have wrongfully exercised dominion and control over

assets belonging to Plaintiff and the Siblings by:

a. Diverting, misappropriating, or otherwise converting profits, rents, and other proceeds from the Property for their own personal use and benefit;

b. Refusing to distribute or account for the Siblings' rightful shares of such assets;

c. Withholding access to books, records, and financial information necessary to identify and recover the converted property;

d. Denying Plaintiff and the Siblings access to Defendant Sultan and to information regarding the status and disposition of the Property and its proceeds; and

e. Engaging in acts of concealment and obstruction to prevent Plaintiff and the Siblings from recovering their property.

106. The acts of Defendants were unauthorized, inconsistent with Plaintiff's and the Siblings' rights, and constitute a wrongful exercise of dominion and control over property to which Plaintiff and the Siblings are entitled.

107. As a direct and proximate result of Defendants' conversion, Plaintiff and the Siblings have been deprived of their property, have suffered actual, incidental, and consequential damages, and continue to suffer irreparable harm unless and until the converted property is returned and Defendants are held to account.

108. Defendants' conduct was willful, wanton, and in bad faith, entitling Plaintiff to recover all damages resulting from the conversion, including but not limited to the value of the property converted, exemplary damages, and the costs and expenses of litigation, including reasonable attorneys' fees.

## COUNT FOUR
### Unjust Enrichment

109. Plaintiff re-alleges and incorporates by reference paragraphs 22 through 86 as if fully set forth herein.

110. Plaintiff and the Siblings, as beneficial owners of the Property and its proceeds, conferred substantial benefits upon Defendants, including but not limited to, profits, rental income, subsidies, proceeds from the sale of air rights, and accumulated assets derived from the Property, which were entrusted to Defendants Sultan and Tayab for management and distribution on behalf of all Siblings.

111. Defendants Sultan, Patonia, Mohammad, Ali, Samay, and Al Wasay, individually and in concert, knowingly and voluntarily accepted and retained these benefits by:

  a. Diverting and appropriating profits, rents, and other proceeds from the Property for their own personal use and benefit;

  b. Failing and refusing to distribute the Siblings' rightful shares of such assets;

  c. Using Property-derived funds to pay for personal expenses and to support the lifestyle of Sultan's immediate family; and

  d. Withholding information and access to records necessary for Plaintiff and the Siblings to recover or account for the benefits conferred.

112. Defendants' retention of these benefits was and is unjust and inequitable, as it was accomplished through misappropriation, concealment, and the breach of fiduciary and contractual obligations owed to Plaintiff and the Siblings.

35

113.    Plaintiff and the Siblings have not received adequate compensation or restitution for the benefits conferred, and Defendants' continued retention of these benefits would result in unjust enrichment at the expense of Plaintiff and the Siblings.

114.    Equity and good conscience require that Defendants disgorge all benefits wrongfully obtained and retained, and that Plaintiff and the Siblings be restored to the position they would have occupied but for Defendants' wrongful conduct, including through an order of restitution and an equitable accounting.

## COUNT FIVE
### Constructive Fraud

115.    Plaintiff re-alleges and incorporates by reference all paragraphs 22 through 86 as if fully set forth herein.

116.    At all relevant times, a relationship of trust and confidence existed between Plaintiff and the Siblings, on the one hand, and Defendant Sultan, on the other, by virtue of Defendant Sultan's role as principal and fiduciary of Tayab Real Estate Co., Ltd. and as the individual entrusted to manage the Property and its proceeds for the collective benefit of all Siblings.

117.    Defendants Sultan, Patonia, Mohammad, Ali, Samay, and Al Wasay, individually and in concert, engaged in a scheme and course of conduct that constituted constructive fraud by:

>   a. Concealing and withholding material information regarding the management, income, expenses, and disposition of the Property and its proceeds;

>   b. Making repeated misrepresentations and false assurances to Plaintiff

and the Siblings regarding the security of their interests, the status of the Property, and the intended distribution of profits;

c. Failing to provide accountings, access to books and records, or transparency regarding the financial affairs of the Property, despite repeated requests;

d. Isolating Defendant Sultan from Plaintiff and the Siblings, and using pretextual justifications to prevent communication and inquiry; and

e. Engaging in acts of stonewalling, intimidation, and threats to deter Plaintiff and the Siblings from seeking information or asserting their rights.

118. Defendants' conduct was undertaken in violation of the trust and confidence reposed in them, and in breach of the fiduciary and confidential duties owed to Plaintiff and the Siblings. Defendants' conduct constituted an abuse of fiduciary relationship and an unconscionable taking of advantage.

119. Plaintiff and the Siblings justifiably relied on Defendants' representations, assurances, and course of conduct, foregoing further inquiry and continuing to entrust the management of the Property and its proceeds to Defendants.

120. As a direct and proximate result of Defendants' constructive fraud, Plaintiff and the Siblings have suffered actual, incidental, and consequential damages, including but not limited to the loss of their rightful share of profits and distributions, deprivation of information necessary to protect their interests, and the costs and expenses incurred in seeking redress for Defendants' misconduct.

121. Defendants' conduct was willful, wanton, and in bad faith, and equity requires that Defendants be held accountable for their constructive fraud,

37

including the imposition of appropriate equitable remedies.

## COUNT SIX
### Civil Theft

122.   Plaintiff re-alleges and incorporates by reference paragraphs 22 through 86 as if fully set forth herein.

123.   Defendants Sultan, Patonia, Mohammad, Ali, Samay, Al Wasay, and Tayab knowingly obtained or used, or endeavored to obtain or use, property belonging to Plaintiff and the Siblings, including but not limited to profits, proceeds, and beneficial interests in the Property, with the intent to, either temporarily or permanently: (a) deprive Plaintiff and the Siblings of their right to the property or a benefit from the property; and/or (b) appropriate the property to their own use or the use of persons not entitled to it, in violation of Fla. Stat. § 812.014.

124.   Defendants acted with specific intent, as evidenced by their deliberate misappropriation, concealment, and conversion of property and funds for their own benefit, to the exclusion of Plaintiff and the Siblings, and by their coordinated efforts to obstruct, stonewall, and threaten Plaintiff and the Siblings to prevent discovery and recovery of their rightful interests.

125.   Defendants' conduct constituted, among other wrongs, an embezzlement whereby they obtained possession of Plaintiff's funds and converted them to their own use.

126.   As a direct and proximate result of Defendants' conduct, Plaintiff and the Siblings have suffered injury, including the loss of their rightful share of profits,

distributions, and other property interests, as well as the deprivation of information necessary to protect their interests.

127. Plaintiff's prior demands and this Complaint satisfy the demand requirement of Fla. Stat. § 772.11 and/or Plaintiff is otherwise entitled to pursue this action for civil theft.

128. Pursuant to Fla. Stat. § 772.11, Plaintiff is entitled to recover threefold the actual damages sustained, together with reasonable attorneys' fees and court costs in the trial and appellate courts.

## COUNT SEVEN
### Fraud

129. Plaintiff re-alleges and incorporates by reference paragraphs 22 through 86 as if fully set forth herein.

130. Defendants Sultan, Patonia, Mohammad, Ali, Samay, and Al Wasay made numerous false statements concerning material facts to Plaintiff and the Siblings, including but not limited to:

   a. Repeatedly assuring Plaintiff and the Siblings that Defendant Sultan was managing the Property for their collective benefit;

   b. Representing that each Sibling's ownership interest in the Property was secure and that profits and proceeds would be distributed equitably;

   c. Stating that all profits were being preserved for the Siblings and that distributions would be made in accordance with prior agreements and practices; and

   d. Affirming that the Siblings' interests would be protected and that Sultan Bayat would act transparently and in good faith.

39

131.   At the time these statements were made, Defendants knew that the representations were false or were recklessly indifferent to their falsehood, as they had already begun to convert the Property and its profits for their own use, to the exclusion of Plaintiff and the Siblings, and were actively concealing material information and misappropriating assets.

132.   Defendants made these false statements with the intent that Plaintiff and the Siblings rely on them, including to induce Plaintiff and the Siblings to refrain from further inquiry, to continue contributing labor and resources, to delay legal action, and to trust Defendants with the management and control of the Property and its proceeds.

133.   Plaintiff and the Siblings justifiably relied on Defendants' false statements, foregoing further inquiry, continuing to contribute to the Property, and deferring to Defendants' authority regarding the administration and distribution of profits.

134.   As a direct and proximate result of their reliance on Defendants' false statements, Plaintiff and the Siblings have suffered actual, incidental, and consequential damages, including but not limited to the loss of their rightful share of profits and distributions from the Property, deprivation of information necessary to protect their interests, and the costs and expenses incurred in seeking redress for Defendants' misconduct.

## COUNT EIGHT
### Breach of Contract

135.   Plaintiff re-alleges and incorporates by reference paragraphs 22 through 86 as if fully set forth herein.

136.   Plaintiff and the Siblings entered into a valid and enforceable contract with Defendant Sultan, pursuant to which Defendant Sultan agreed to manage and administer the Property for the benefit of all Siblings.

137.   Under the terms of the contract, Defendant Sultan agreed to (i) manage and administer the Property and/or Tayab for the benefit of all Siblings, (ii) distribute proceeds from the use of the Property to each Sibling in accordance with their beneficial ownership share, (iii) provide the Siblings with periodic accountings and other information sufficient for them to review the management, income, and expenses from the use of the Property.

138.   In exchange, Plaintiff and the Siblings provided consideration, including, but not limited to, the payment of various monthly subsidies, reimbursement of expenses, and other payments and benefits to Defendant Sultan for his management services, as well as their cooperation and contributions to the Property.

139.   For a period of time, Defendant Sultan partially performed under the contract, including in connection with the distribution of proceeds from the sale of air rights pertaining to the Property.

140.   Plaintiff and the Siblings fully performed their obligations under the contract, including providing the agreed-upon subsidies, payments, and

41

cooperation, and refraining from interfering with Sultan's management of the Property.

141.    Defendant Sultan materially breached the contract by, among other things:

a.    Failing to manage the Property for the collective benefit of all Siblings;

b.    Failing to provide full and accurate accountings of the Property's finances and operations;

c.    Withholding and concealing material information regarding the management, income, and expenses of the Property;

d.    Diverting profits and assets from the Property for the exclusive benefit of himself and his immediate family;

e.    Failing to distribute profits and proceeds in accordance with the agreed-upon shares and prior practice;

f.    Refusing to respond to reasonable requests for information, documentation, and access to records; and

g.    Otherwise failing to adhere to the implied covenant of good faith and fair dealing.

142.    As a direct and proximate result of Defendant Sultan's breaches of contract, Plaintiff and the Siblings have suffered actual, incidental, and consequential damages, including but not limited to the loss of their rightful share of profits and distributions from the Property, deprivation of information necessary to protect their interests, and the costs and expenses incurred in seeking redress for Defendant Sultan's misconduct.

143.    Plaintiff is entitled to all remedies available for breach of contract under Florida law, including:

a.    Compensatory damages in an amount to be proven at trial

b. Reasonable attorneys' fees and costs as permitted by law; and

c. Such other and further relief as the Court deems just and proper.

## COUNT NINE
### Tortious Interference with Business and Contractual Relations

144. Plaintiff re-alleges and incorporates by reference paragraphs 22 through 86 as if fully set forth herein.

145. Plaintiff and the Siblings had a valid and enforceable business and contractual relationship with Defendant Sultan, pursuant to which Defendant Sultan agreed to manage and administer the Property for the benefit of all Siblings, in exchange for the payment of various subsidies, reimbursements, and other consideration provided by Plaintiff and the Siblings.

146. Defendants Patonia, Mohammad, Ali, Samay, and Al Wasay (collectively, the "Interfering Defendants") had knowledge of the business and contractual relationship between Plaintiff/the Siblings and Defendant Sultan, including the terms of Defendant Sultan's management and the Siblings' rights to information, accountings, and distributions.

147. The Interfering Defendants intentionally and unjustifiably interfered with the business and contractual relationship between Plaintiff/the Siblings and Defendant Sultan by, among other things:

   a. Systematically stonewalling and refusing to provide information, documentation, or access to records regarding the Property;

   b. Isolating Defendant Sultan from Plaintiff and the Siblings, intercepting communications, and preventing meetings or discussions regarding the Property;

43

c. Withholding books, records, and accountings, and refusing to allow inspection of the Property or relevant documents;

d. Issuing threats and engaging in intimidation to deter Plaintiff and the Siblings from asserting their rights or seeking information;

e. Publishing false and malicious statements about Siblings who sought information, including calling law enforcement to deter further inquiry; and

f. Coordinating among themselves to block access, withhold information, and perpetuate a scheme to misappropriate the Property and its profits for their exclusive benefit.

148. The Interfering Defendants' actions were without privilege or legal justification and were undertaken with malice or, at a minimum, with knowledge of the business and contractual relationship and with the intent to disrupt it.

149. As a direct and proximate result of the Interfering Defendants' tortious interference, Plaintiff and the Siblings have suffered actual, incidental, and consequential damages, including but not limited to the loss of their rightful share of profits and distributions from the Property, deprivation of information necessary to protect their interests, and the costs and expenses incurred in seeking redress for Defendants' misconduct.

150. Plaintiff is entitled to all remedies available for tortious interference with business and contractual relations under Florida law, including:

a. Compensatory damages in an amount to be proven at trial;

b. Reasonable attorneys' fees and costs; and

c. Such other and further relief as the Court deems just and proper.

**COUNT TEN**
**Civil Conspiracy**

44

151.    Plaintiff re-alleges and incorporates by reference paragraphs 22 through 86 as if fully set forth herein.

152.    Defendants Sultan Bayat, Patonia Bayat, Mohammad Bayat, Ali Bayat, Samay Bayat, Al Wasay Bayat, and Tayab Real Estate Co., Ltd. (collectively, "Defendants"), acting in concert and by agreement, formed and participated in a common scheme or plan to commit unlawful acts, including but not limited to breach of fiduciary duty, conversion, civil theft, fraud, and the misappropriation of property and profits belonging to Plaintiff and the Siblings, or to accomplish a lawful act by unlawful means, including the systematic withholding of information, stonewalling, threats, and concealment of assets.

153.    In furtherance of the conspiracy, Defendants committed numerous overt acts, including but not limited to:

    a. Withholding and concealing financial records, accountings, and documentation regarding the Property;

    b. Refusing to provide access to books, records, and accountings despite repeated requests;

    c. Isolating Defendant Sultan from the Siblings and using pretextual justifications to prevent communication and inquiry;

    d. Issuing threats and engaging in intimidation, including explicit warnings by Defendant Mohammad that any attempt to assert rights would result in adverse consequences;

    e. Publishing false and malicious statements about Siblings who sought information, including calling law enforcement to deter further inquiry; and

    f. Coordinating among family members to block access, withhold information, and perpetuate a scheme to misappropriate the Property

and its profits for the exclusive benefit of Defendant Sultan's immediate family.

154. Defendants knowingly and intentionally entered into and participated in the conspiracy with the purpose of depriving Plaintiff and the Siblings of their rightful interests in the Property and its profits, and to conceal their collective wrongdoing.

155. As a direct and proximate result of the acts performed in furtherance of the conspiracy, Plaintiff and the Siblings have suffered actual, incidental, and consequential damages, including but not limited to the loss of their rightful share of profits and distributions from the Property, deprivation of information necessary to protect their interests, and the costs and expenses incurred in seeking redress for Defendants' misconduct.

156. Plaintiff is entitled to all remedies available for civil conspiracy under Florida law, including:

    a. Compensatory damages in an amount to be proven at trial;

    b. Reasonable attorneys' fees and costs; and

    c. Such other and further relief as the Court deems just and proper.

## COUNT ELEVEN
### Appointment of Receiver and Injunctive Relief

157. Plaintiff re-alleges and incorporates by reference paragraphs 22 through 86 as if fully set forth herein.

46

158.   Plaintiff and the Siblings have a beneficial interest in the Property and in Tayab Real Estate Co., Ltd., which holds legal title to the Property and is managed and controlled by Defendant Sultan and/or his immediate family.

159.   As set forth above, Defendants have engaged in a pattern of obstruction, concealment, and misappropriation of assets, including the diversion of profits and proceeds from the Property for their own benefit, to the exclusion of Plaintiff and the Siblings. Defendants have further engaged in egregious fraud, self-dealing, and waste with respect to the Property and the misappropriation and diversion of profits and property belonging to Plaintiff and the Siblings.

160.   Defendants have refused to provide accountings, financial records, or access to information necessary to protect the Siblings' interests, and have systematically denied Plaintiff and the Siblings meaningful participation in the management or oversight of the Property and Tayab.

161.   There is a substantial risk that Defendants will continue to dissipate, conceal, or misappropriate assets belonging to Plaintiff and the Siblings, and that the value of the Property and the Siblings' interests will be irreparably harmed absent immediate judicial intervention.

162.   Plaintiff and the Siblings have no adequate remedy at law to prevent further harm, and the appointment of a receiver or ancillary receiver and the issuance of injunctive relief is necessary to preserve the status quo, protect the Property and its proceeds, and ensure a full and fair accounting of all assets and transactions.

163.   Under Florida law, including Fla. Stat. § 607.1432 and the Court's inherent equitable powers, the appointment of a receiver or ancillary receiver and the issuance of an injunction is appropriate where, as here, there is evidence of mismanagement, self-dealing, or risk of irreparable harm to the interests of beneficiaries.

## COUNT TWELVE
### Declaratory Relief

164.   Plaintiff re-alleges and incorporates by reference paragraphs 22 through 86 as if fully set forth herein.

165.   An actual, present, and justiciable controversy exists between Plaintiff (individually and as assignee of the Siblings) and Defendants regarding the beneficial ownership of the Property and Tayab Real Estate Co., Ltd., and the right to share proportionately in the proceeds derived from the use or disposition of the Property.

166.   Plaintiff and the Siblings contend that they are the beneficial owners of interests in the Property and Tayab Real Estate Co., Ltd., and are entitled to an accounting and to share in all profits, proceeds, and distributions in accordance with their respective shares.

167.   Defendants dispute, deny, or have otherwise failed to recognize Plaintiff's and the Siblings' beneficial ownership interests, and have refused to provide accountings, distributions, or access to information necessary to protect those interests.

168. Plaintiff is entitled to a declaratory judgment under Florida law, including Fla. Stat. § 86.011 et seq., declaring the respective rights and interests of the parties in the Property and Tayab Real Estate Co., Ltd., and confirming that Plaintiff and the Siblings are the beneficial owners and are entitled to proportionately share in all proceeds derived from the use or disposition of the Property.

## Reservation of Right to Plead Claim for Punitive Damages Pursuant to Fla. Stat. § 768.72

Plaintiff hereby reserves the right to plead a claim for punitive damages against Defendants with respect to appropriate claims governed by Florida law, and upon determination by the Court that the evidence filed herewith satisfies the standard required by Fla. Stat. § 768.72, Plaintiff intends to promptly amend this Complaint to assert a claim for punitive damages against Defendants.

**WHEREFORE**, Plaintiff, individually and as assignee of the Siblings, respectfully requests that the Court enter judgment in favor of Plaintiff and against Defendants, jointly and severally, and grant the following relief:

1. Injunctive Relief:

    (a) Enter an interlocutory and permanent injunction enjoining Defendants, and all persons acting in concert with them, from destroying, concealing, transferring, or dissipating any information, documents, contracts, plans, tangible property, monies, or assets relating to the Property or Tayab Real Estate

Co., Ltd., and requiring the immediate production of all books, records, and sources of Defendants' living expenses; and

(b) Enjoin Defendants from further deceptive, unfair, fraudulent, or obstructive conduct as alleged in the Complaint, including any further misappropriation or concealment of assets belonging to Plaintiff and the Siblings.

2. Appointment of Receiver:

(a) Appoint a receiver or ancillary receiver over the Property and Tayab Real Estate Co., Ltd., with all powers necessary to take possession, control, and management of the Property and its assets, to conduct a full accounting, to preserve and protect the Property and its proceeds, and to prevent further dissipation or misappropriation of assets.

3. Declaratory Relief:

(a) Enter a declaratory judgment declaring that Plaintiff and the Siblings are the beneficial owners of interests in the Property and Tayab Real Estate Co., Ltd., and are entitled to proportionately share in all profits, proceeds, and distributions derived from the use or disposition of the Property.

4. Accounting and Disgorgement:

50

(a) Order a full accounting and reconciliation of all financial transactions, contracts, payments, and distributions relating to the Property and Tayab Real Estate Co., Ltd.; and

(b) Order Defendants to disgorge all profits, benefits, salaries, commissions, bonuses, and other consideration wrongfully obtained or retained during the period of breach, misappropriation, or conspiracy.

5. Damages:

(a) Order a full accounting and reconciliation of all financial transactions, contracts, payments, and distributions relating to the Property and Tayab Real Estate Co., Ltd.; and

(b) Order Defendants to disgorge all profits, benefits, salaries, commissions, bonuses, and other consideration wrongfully obtained or retained during the period of breach, misappropriation, or conspiracy.

6. Attorney's Fees and Costs:

(a) Award Plaintiff reasonable attorneys' fees and costs incurred in this action, including fees and costs for trial and any appellate proceedings, as permitted by statute, contract, or equity.

7. Other and Further Relief:

(a) Grant such other, further, and different relief as the Court may deem just, equitable and proper under the circumstances.

## JURY TRIAL DEMANDED

Plaintiff demands trial by jury on all issues so triable.

Dated: October 20, 2025

HOLLAND & KNIGHT LLP

/s/ Patrick B. Reagin
J. Allen Maines (FBN 226270)
allen.maines@hklaw.com
Patrick B. Reagin (*pro hac vice*)
patrick.reagin@hklaw.com
1180 West Peachtree St. NW, Suite 1800
Atlanta, Georgia 30309
Telephone:   (404) 817-8500
Facsimile:    (404) 881-0470

Michael M. Gropper (FBN 105959)
michael.gropper@hklaw.com
Wesley J. Martinez (FBN 1013924)
wesley.martinez@hklaw.com
50 North Laura Street, Suite 3900
Jacksonville, Florida 32202
Telephone:   (904) 353-2000
Facsimile:    (904) 358-1872

*Counsel for Plaintiff Bassir Bayat*

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

BASSIR BAYAT,

      Plaintiff,

    v.

SULTAN BAYAT, PATONIA BAYAT,
MOHAMMAD BAYAT, SAMAY BAYAT, AL
WASAY BAYAT, and TAYAB REAL ESTATE
CO., LTD.,

      Defendants.

Case No. 3:25-CV-1085

## **VERIFICATION**

I, BASSIR BAYAT, declare under penalty of perjury under the laws of the
United States of America, that I have reviewed the foregoing, and the facts alleged
therein are true and correct to the best of my knowledge and belief.

This 20th day of October, 2025.

*/s/ Bassir Bayat*
BASSIR BAYAT

#528757837_v1

## CERTIFICATE OF SERVICE

I hereby certify that on October 20, 2025, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will automatically send e-mail notification of such filing to counsel of record.

/s/ Patrick B. Reagin
Patrick B. Reagin
*Counsel for Plaintiff*