# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

BASSIR BAYAT,

        Plaintiff,

    v.

SULTAN BAYAT, PATONIA BAYAT, MOHAMMAD BAYAT, SAMAY BAYAT, AL WASAY BAYAT, and TAYAB REAL ESTATE CO., LTD.,

        Defendants.

Case No. 3:25-CV-1085

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Plaintiff, Bassir Bayat (the "Plaintiff") files this Response in Opposition to Defendants' Motion to Dismiss (the "Motion") Plaintiff's Verified First Amended Complaint (the "FAC" or "Complaint"). The Defendants implausibly invite this Court to conclude that all 12 counts within 168 detailed paragraphs fail to establish a single legally cognizable claim against them. They do so despite the denial of their Motion to Stay Discovery, pursuant to which the Court applied a "preliminary peek," and concluded dismissal was unlikely. (Dkt. 18).

The Motion is notable for its dearth of legal citations. It misconstrues relevant pleading standards, mischaracterizes factual allegations as "speculation," and ignores the Defendants' joint liability through the alleged conspiracy. Defendants relegate numerous material facts to footnotes in the seeming hope they will be overlooked. The challenges are nominally divided into three buckets. First,

that this Court lacks personal jurisdiction. Second, that the FAC is an impermissible shotgun pleading. Third, that all 12 counts fail under Rule 12(b)(6). Each of these grounds lacks merit and the Motion should be denied.

## BACKGROUND

This case involves a commercial property purchased by a refugee immigrant for the benefit of his children thirty years ago (the "Property"). All of the children, many of whom reside in this district, performed services or contributed to the success of the property. One of them, Sultan Bayat, managed the Property, but he and his direct family have been stealing and living off of rents and monies generated by it, and now claim to be its sole owners. Defendant Sultan has <u>admitted</u> such monies belong to his siblings. The remaining siblings bring this action seeking the protection of this court.

After removing the original Complaint, Defendants moved to dismiss. (Dkt. 12). Though the original claims were aptly pled, Plaintiff exercised his right to amend. (Dkt. 13). The FAC includes additional allegations to address Defendants' purported claims of insufficient detail as to certain issues. (*Id.*) On November 4, 2025, the Court denied Defendants' Motion to Stay Discovery finding Defendants failed to show the Complaint was likely to be dismissed. (Dkt. 18)

Defendants' own recitation of the facts alleged in the FAC illustrates both the sufficiency of the pleading and Defendants' comprehension of the allegations against them. As Defendants summarize, Plaintiff "alleges that his father purchased the [subject] New York property and intended it to generate income for

all seven Bayat siblings, Tayab owns the property, Sultan is the president and chairman of Tayab and manages the property[.]" (Mot. at 3). Defendants explain that Plaintiff alleges the property was the subject of an oral contract between Sultan and the Siblings, that Sultan owed and breached fiduciary duties to the Siblings, that Sultan and his family have misappropriated rents, profits, and other benefits derived from the Property to their own purposes, and that they have all participated in a scheme to misrepresent and conceal relevant facts to Plaintiff and the Siblings. (*See generally* Mot. at 3-6). Defendants have adequate notice of the claims for purposes of Rules 8 and 9.

Indeed, the FAC alleges in detail that an oral contract existed between the Bayat siblings regarding the management of the Property. (FAC at ¶ 2, ¶ 23, ¶ 25, ¶ 26, ¶ 135 to ¶ 142c). It specifies that they each were entitled to a 2/13 interest in the Property, with the exception of Arifa Rahin, who holds 1/13. (FAC at ¶ 28). The material terms of the contract are specified: "Sultan agreed to (i) manage and administer the Property and/or Tayab for the benefit of all Siblings, (ii) distribute proceeds from the use of the Property to each Sibling in accordance with their beneficial ownership share, (iii) provide the Siblings with periodic accountings and other information sufficient for them to review the management, income, and expenses from the use of the Property." (*Id.*, ¶ 137). Plaintiff and his Siblings provided consideration in the form of various monthly subsidies, reimbursement of expenses, and other payments and benefits to Sultan for his management services, and their cooperation and contributions to the Property. (*Id.*, ¶ 138). The

FAC itemizes breaches of these terms by Sultan, including his failure to share profits and other benefits of the Property with Plaintiff and the Siblings and his refusal to provide an accounting and access to information, (*id.*, ¶ 141), and damages resulting therefrom (*id.*, ¶¶ 142-43).

The FAC also alleges the existence of a fiduciary relationship between Sultan, Plaintiff, and the Siblings, and Sultan's breaches of corresponding duties. (*Id.*, ¶¶ 94-98, 118, 152). Plaintiff includes several additional claims, including tort-based theories of recovery. (*Id.,* ¶¶ 87-93, 94-102, 103-108, 115-121, 122-128, 129-134, 147-150). Because Plaintiff has only limited information due to intentional concealment by the Defendants, and the underlying facts are subject to further development through discovery, all counts are pled in the alternative, to the extent inconsistent, as the federal rules allow. *See* Fed. R. Civ. P. 8(d)(2),(3). Each of them is adequately supported by well-pled facts.

Bolstering the plausibility of Plaintiff's allegations, the FAC describes the 2006 sale of air rights pertaining to the Property, from which the resulting $2.1 million in proceeds was allocated among the Siblings pursuant to their respective shares, all consistent with the terms of the alleged contract. (*Id.* ¶¶ 33-34).[1] The FAC details specific assurances made by Sultan to Plaintiff and the Siblings in the ensuing period: that the terms of the agreement continued to be honored, and assurances that Plaintiff and the Siblings would continue to receive their respective

---

[1] While seeming to want to jump the gun and pierce the pleadings by disputing the "veracity" of other allegations, Defendants conspicuously do not deny this fact.

shares of proceeds derived from the Property. (Dkt. 13, ¶¶ 29, 40-44).

Contrary to these assurances, the FAC alleges that Sultan and his family members were covertly appropriating proceeds and benefits from the Property and were no longer managing the Property for the benefit of all Siblings, making their representations knowingly false and misleading when made. (*See, e.g.*, Dkt. 13, ¶¶ 46, 48). Plaintiff alleges Sultan's co-Defendants participated in a conspiracy to conceal this fraud and to deter Plaintiff and the Siblings from investigating further. (*See id.*, ¶¶ 50, 52-54, 64-74). The FAC details that Defendants collectively withheld financial records regarding the property (*id.*, ¶ 153a) and, *inter alia*, sought to threaten, intimidate, and harass Plaintiff and Siblings into abandoning their assertion of rights concerning the Property. (*id.*, ¶¶ 153d-153e).

In response to previous arguments that the original Complaint did not sufficiently allege the Property had generated profits after air-rights sale, Plaintiff amended the FAC to provide robust detail supporting that the Property has regularly been leased to commercial and residential tenants. (*See id.*, ¶¶ 47, 55-57, 61). Defendants seek to dispel these additional well-pleaded allegations as "speculation" and "assumption," ignoring well established pleading rules. *Compare* Mot. at 6, *with Phelps v. Lee Cnty., Florida*, 2:21-CV-121-JLB-MRM, 2021 WL 5826235, at *3 (M.D. Fla. Dec. 8, 2021) ("[A]ll well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff."). Plaintiff pleads twelve detailed counts, each of which adheres with precision to the elements required under applicable law.

Defendants' dilatory challenges are due to be denied for the reasons that follow.

## ARGUMENT

### I.   Defendants' Challenge to Personal Jurisdiction Fails.

The Defendants' threshold challenge to personal jurisdiction is meritless. Federal courts "sitting in diversity undertake[] a two-step inquiry in determining whether personal jurisdiction exists: the exercise of jurisdiction must (1) be appropriate under the state long-arm statute and (2) not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution." *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009) (citing *Horizon Aggressive Growth, L.P. v. Rothstein–Kass, P.A.,* 421 F.3d 1162, 1166 (11th Cir. 2005). Florida's long-arm statute, § 48.193(1)(a), Fla. Stat., enumerates acts that subject a defendant to specific personal jurisdiction.

One of these, under § 48.193(2), is "[c]omitting a tortious act within the state[.]" The defendant need not be physically present in Florida when committing the tortious act. *Volt, LLC v. Volt Lighting Group LLC,* 369 F.Supp.3d 1241 (M.D. Fla. 2019). Non-residents submit to Florida's jurisdiction by transmitting "into Florida" an electronic communication that results in a tort. *Wendt v. Horowitz*, 822 So. 2d 1252, 1260 (Fla. 2002); *see also Machtinger v. Intertial Airline Servs., Inc.* 937 So. 2d 730, 736 (Fla DCA 2006) (misrepresentations into Florida satisfy due process). A "single act" can "establish the non-resident's minimum contacts with the forum[.]" *Volt,* 369 F.Supp.3d 1241, 1246–47.

The FAC alleges specific communications and conduct directed into Florida

in connection with the subject misrepresentations and other alleged breaches and torts. (*See* Dkt. 13, ¶¶ 3, 18-19, 21, 32, 35-36, 40-44, 90). These were "made both during in-person meetings in Florida and through communications by telephone, email, and text directed into Florida," where Plaintiff and certain Siblings reside. (FAC at ¶¶ 6, 18, 35, 36, 42). Sultan is alleged to have traveled into the State of Florida on multiple occasions, wherein he proceeded to make false representations in furtherance of his ongoing fraud and designed to continue the civil conspiracy. (FAC at ¶ 40, ¶ 41, ¶ 42, ¶43, ¶ 90). All of these satisfy the Florida long-arm statute.

Another relevant long-arm prong, § 48.193(7), is "[b]reaching a contract in this state by failing to perform acts required by the contract to be performed in this state." Regarding Count 8 for breach of contract, the FAC alleges that Plaintiff and the Siblings entered into a valid and enforceable contract, pursuant to which Sultan received benefits from non-managing Siblings in Florida and provided various communications relating to the status of the Property. (FAC at ¶¶ 135-143c). The FAC also alleges proceeds, such as those from the air-rights sale, were distributed in Florida. (*Id.*, ¶ 34). Sultan's alleged subsequent failures to provide additional proceeds and information to Plaintiff and Florida-based Siblings, i.e., his breaches, satisfy this long-arm prong. (*See, e.g.*, *id.* at ¶¶ 46, 48, 78, 141).

Defendants concede Florida follows the "conspiracy theory of jurisdiction," which holds "that directing a conspiracy toward Florida satisfies both specific long-arm jurisdiction and the due process concerns implicated in a minimum contacts analysis," and that "jurisdiction over a nonresident coconspirator may be exercised

even absent sufficient personal contacts with the forum if those contacts are supplied by another[.]" *See Amersham Enterprises, Inc. v. Hakim-Daccach*, 333 So. 3d 289, 296 (Fla. DCA 3d 2022); Mot. at 8. In response, they contend only that Plaintiff's civil conspiracy count is inadequately pled. For reasons addressed in connection with Count 10, *infra*, the conspiracy is well-pled, subjecting all Defendants to personal jurisdiction on the basis of any of their relevant contacts with Florida.

The FAC pleads sufficient minimum contacts between Sultan and Florida in the form of communications and in-person meetings in Florida, which Defendants all but concede. *Wendt v. Horowitz*, 822 So. 2d 1252, 1260 (Fla. 2002) (communications into Florida form basis for personal jurisdiction even without physical contacts); *Machtinger v. Inertial Airline Servs., Inc.*, 937 So. 2d 730, 736 (Fla. Dist. Ct. App. 2006) (fraudulent misrepresentations into Florida support minimum contacts and satisfy due process). As a result, even if co-Defendants lacked personal minimum contacts with Florida, which is denied, they remain subject to personal jurisdiction by virtue of their participation in a conspiracy with Sultan. *Amersham Enters., supra; Alexander v. Trump*, 404 So. 3d 425, 429-30 (Fla. 4th DCA 2025).

In challenging personal jurisdiction, Defendants present <u>unsworn</u> declarations, which have no evidentiary value and should be stricken. *Venetian Salami Co. v. Parthenais*, 554 So. 2d 499, 502 (Fla. 1989); *La Fiduciaria, S.A. v. Portuguez*, 398 So. 3d 487, 491 (Fla. 5th DCA. 2024). But even these <u>confirm</u> visits

to Florida during the relevant time period, all consistent with the allegations of the FAC. (*Compare* Mot. Exhs 1-6 *with* FAC at ¶¶ 36, 40-43). To the extent there are contested issues of fact regarding the Defendants' contacts with Florida, these are not properly resolved at the pleading stage, and Plaintiff will be propounding discovery on Defendants relating to same in the next five (5) business days. *Gleneagle Ship Mgmt. Co. v. Leondakos*, 602 So. 2d 1282, 1284 (Fla. 1992); *Am. C.L. Union of Fla., Inc. v. City of Sarasota*, 859 F.3d 1337, 1341 (11th Cir. 2017). Defendants' challenges to personal jurisdiction fail.

## II.    The FAC does not Constitute an Impermissible Shotgun Pleading.

The Defendants' "shotgun" pleading challenge is a baseless distraction. (Mot. at pg. 11-12). The Complaint conforms to Fed. R. Civ. P. 8(a)(1),(2)&(3). It is replete with detail, incorporates specific factual allegations into each count, and delineates which counts are asserted against which Defendants. *Nelson v. Gualtieri*, No. 8:19-CV-449-T-36JSS, 2020 WL 1158712, at *3 (M.D. Fla. Mar. 10, 2020) (denying motion to dismiss). The "examples" selected by Defendants in their Motion illustrate that the allegations are well-pled. For instance, Defendants describe Count 2 as asserting a claim for breach of fiduciary duty against Sultan and aiding and abetting liability against his family. (Mot. at 12). What confusion exists when Plaintiff expressly distinguishes the grounds for liability as between Defendants is left unanswered. If Defendants take issue with the fact that certain grounds for liability are pled against all of them, they appear to disregard the import of the alleged civil conspiracy, which renders them jointly liable for the

conduct of their co-conspirators. *Posada v. Aspen Specialty Ins. Co.*, 8:22-CV-1578-CEH-AAS, 2023 WL 2711538, at *6 (M.D. Fla. Mar. 30, 2023) ("The fact that defendants are accused collectively does not render the complaint deficient.") (*quoting Kyle K. v. Chapman*, 208 F.3d 940, 944 (11th Cir. 2000). Defendants cannot credibly claim that the FAC fails to adequately put them on notice of their alleged misconduct. *Id.*

## III.    Defendant's 12(b)(6) Challenges to all of the FAC's Counts Fail.

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). It need only contain sufficient matter, accepted as true, to "state a claim that is plausible on its face." *See, e.g., Centro Dev. Corp. Cent. Mut. Ins. Co.*, 720 F. App'x 1004 (11th Cir. 2018) (*quoting Ashcroft v. Iqbal*, 556 U.S. 662 (2009)). In deciding a Rule 12(b)(6) motion, a court must construe the complaint broadly and view the allegations in the light most favorable to the plaintiff. *Levine v. World Fin. Network Nat'l Bank*, 437 F.3d 1118, 1120 (11th Cir. 2006); *Hawthorne v. MacAdjustment, Inc.*, 140 F.3d 1367, 1370 (11th Cir. 1998). Cir. 1994) (citations omitted).

### a.  The Defendant's 'Catchall' Arguments Fail.

Defendants argue certain "general defects" afflict all of Plaintiff's claims. Each of these purported defects lacks a basis in law or fact.

### 1.  Plaintiff has properly sued on behalf of others.

Defendants argue Plaintiff lacks standing to sue on behalf of his Siblings. Plaintiff alleges that he is the assignee of his Siblings' claims. (FAC at ¶ 7). It

suffices at the pleading stage to allege the existence of the assignments. *Robert J. Hanopole, D.C., P.A. v. State Farm Mut. Auto. Ins. Co.*, 345 So. 3d 303, 307 (Fla. 4th DCA 2022) (reversing trial court's dismissal of action for failure to attach copy of assignment). Contrary to Defendants' arguments, there is no prohibition on the assignment of tort-based claims where the alleged injuries are not purely personal (e.g., physical injury, emotional distress, etc.). *See, e.g., Columbia Bank v. Turbeville*, 143 So. 3d 964, 970 (Fla. 1st DCA 2014); *Restless Media GmbH v. Johnson*, 22-CV-80120-RAR, 2023 WL 2836971, at *4–6 (S.D. Fla. Feb. 1, 2023); *Floyd v. USI Ins. Servs. LLC*, 3:24CV95-TKW-HTC, 2024 WL 4800584, at *5–6 (N.D. Fla. July 22, 2024).

### 2. Plaintiff adequately pleads interests in the Property.

Defendants argue Plaintiff has not alleged that any Bayat Sibling has an ownership interest in the property or legal entitlement to profits or information therefrom. (Mot. at 14-15). This argument glazes express allegations of the FAC, including that: (1) Plaintiff and the Siblings have a direct beneficial interest in the Property and in Tayab (FAC at ¶ 158), (2) they are beneficial owners of interests in the Property and Tayab (*id.*, ¶ 165),[2] and (3) the contract between them obligated Sultan to distribute proceeds from the use of the Property and provide the Siblings with periodic accountings and other information (*id.*, ¶ 137). This purported

---

[2] Defendants acknowledge this allegation in a buried footnote, where they contend beneficial ownership is a "fact-specific inquiry," which obviously makes it inappropriate for resolution at the pleading stage. *See* Mot., at 16, n. 10.

"defect" lacks any merit.

### 3.  Plaintiff adequately pleads harm.

Defendants next suggest that Plaintiff's allegations of harm "are speculative," and that Plaintiff fails to allege that the Property has generated "profits since the last alleged distribution[.]" (Mot. at 16). This argument <u>again</u> ignores the FAC, which expressly: alleges the Property "has continuously generated profits and other proceeds, <u>including during the period after the distribution of the proceeds from the 2006 sale of air rights</u>," details why this is a reasonable inference based on specific information, and alleges Defendants have diverted such profits. (FAC at ¶¶55-63) (emphasis added). Beyond this, the "Federal Rules do not impose the requirement to plead a specific amount of damages in connection with a claim." *Lagarde Ltd. v. Fed. Express Corp.*, CV 25-1412, 2025 WL 2337133, at *6 (E.D. La. Aug. 13, 2025).[3] Defendants' "third" purported defect is nothing more than a waste of judicial time.

### 4.  Plaintiff has pled the fraud-based claims with particularity.

Defendants challenge the particularity of Counts 1, 2, 5-7 and 11, which they argue implicate fraud. Rule 9(b) requires the FAC to give Defendants "fair notice of the nature of the claim, notice of the grounds the claim rests on, and must be based on a reasonable belief a wrong has been committed." *Dah Chong Hong, Ltd.*

---

[3] This is especially true where the Defendants are alleged to have deliberately withheld and concealed information that would enable the Plaintiff to determine any precise amount at the pleading stage.

*v. Silk Greenhouse, Inc.*, 719 F. Supp. 1072, 1073 (M.D. Fla. 1989) (citation omitted). The rule is satisfied through "sufficient identification of the circumstances constituting fraud so an adequate answer may be prepared." *Id.* While this includes "who, what, when, where" type allegations, "alternative means are also available to satisfy the rule," as long as the "nature of the alleged misrepresentations" is identified. *Colonial Penn Ins. Co. v. Value Rent-A-Car Inc., 814 F. Supp.* 1084, 1092 (S.D. Fla. 1992); *accord Office of Attorney Gen. Dep't of Legal Affairs v. Moving & Storage Accounting Inc.*, 18-CV-63144, 2019 WL 2255575, at *8 (S.D. Fla. Mar. 22, 2019), *report and recommendation adopted sub nom. Office of Attorney Gen. v. Moving & Storage Accounting Inc.*, 18-63144-CIV, 2019 WL 3429123 (S.D. Fla. May 1, 2019).

The FAC identifies numerous instances, including on specific trips to Florida (i.e., the "when" and "where"), during which Sultan falsely assured Plaintiff and the Siblings (i.e., the "who") that their respective shares in the Property and/or Tayab were secure, that profits and proceeds would be distributed equitably and that "everyone w[ould] be taken care of and get their share of the building" (i.e., the "what"). (FAC at ¶¶ 35-36, 40-43). Plaintiff further alleges Sultan represented to Plaintiff and the Siblings that "future distributions would be made in the same manner as the proceeds of the sale of air rights" relating to the Property. (*see, id.*, ¶ 41). Plaintiff alleges these misrepresentations were made "both during in-person meetings in Florida and through communications by telephone, email, and text directed into Florida." (*Id.,* ¶ 42). Plaintiff includes details as to several of these,

including that they occurred: (1) at a gathering at the home of Rahin following the COVID-19 pandemic and were made to Rahin and Ehsanollah (*id.*, ¶ 43), and (2) in a specific conversation between Sultan and Farid relating to Farid's concerns about rental income generated by the Property (*id.*, ¶ 44), among others.

Plaintiff alleges that, in fact, Sultan and his family had covertly been appropriating proceeds and other benefits from the Property to themselves and were no longer managing the Property for the benefit of all Siblings, making their representations knowingly false when made. (*See, e.g.*, Dkt. 13, ¶¶ 46, 48). Plaintiff alleges Sultan's co-Defendants participated in a conspiracy to conceal this fraud and to deter Plaintiff and the Siblings from investigating further. (*See id.*, ¶¶ 50, 52-54, 64-74). Defendants have "fair notice" of the nature of the alleged fraud: Sultan and his family orchestrated a scheme to misappropriate family assets to their own purposes and spent years concealing same from Plaintiff and the Siblings. Rule 9(b) is accordingly satisfied. *Da Chong Hong*; *Colonial Penn*, *supra*.

## b. Defendants' challenges to specific counts fail.

Defendants challenge a handful of specific counts under Rule 12(b)(6). Like the rest of the Motion, their unsupported arguments are contrary to law and the facts alleged in the FAC.

### 1. Count 1 states plausible violations of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.201, et seq.

The Defendants argue that "Bassir does not allege that he and his siblings are *consumers*, that any defendant engaged in any act either likely to mislead or

substantially injurious to *consumers*, that he and his siblings were harmed by any such act, or that any *consumer* has been injured." (Motion at 16) (emphasis added). If Defendants' position is that Plaintiff and/or the Siblings must be "consumers" to assert claims under FDUTPA, they are mistaken. *Bosco v. Russian*, No. 8:24-CV-2024-MSS-LSG, 2025 WL 2083672, at *8 (M.D. Fla. June 17, 2025) (*citing Orange Lake Country Club, Inc. v. Castle Law Group, P.C.*, 617CV1044ORL31DCI, 2018 WL 1535719, at *5 (M.D. Fla. Mar. 29, 2018)).[4]

The FAC alleges that the Defendants made "false and misleading representations" in connection with Sultan's management and operation of the Property (FAC at ¶ 18). These allegations easily satisfy FDUTPA's prohibition on "unfair or deceptive acts or practices in the conduct of any trade or commerce," which is defined to include "providing" any "service" to an individual. §§ 501.204(1), 501.203(8), Fla. Stat. The alleged conduct was unethical, oppressive, and unscrupulous; thereby constituting unfair practice. *PNR, Inc. v. Beacan Prop. Mgmt.*, 842 So. 2d 773, 777 (Fla. 2003). Defendants' challenge to Count 1 fails.

### 2. Count 4 states a plausible unjust enrichment claim.

Defendants challenge the unjust enrichment claim, because it "fails to allege that the Bayat siblings conferred a benefit on the defendants." (Mot. at pg. 19). In the next breath, they undermine their claim by reciting the FAC's allegations of

---

[4] Even if there were such a requirement, the broad statutory definition of "consumer," which includes "an individual," would easily be satisfied. § 501.203(7), Fla. Stat.

various subsidies and other benefits conferred on the Defendants by Plaintiff and the Siblings based specifically on the understanding that Sultan was managing the Property for their benefit. (*Id.*) Indeed, Plaintiff specifically alleges that Bayat siblings agreed to work in the family restaurant for little to no pay (FAC at ¶ 31), and provided monthly subsidies, reimbursement of expenses, access to resources and support, and other payments and benefits (*id.*, ¶ 32), all with the expectation that Sultan was managing the Property for their mutual benefit (*id.*). The FAC also alleges that profits from the family restaurant (to which Siblings contributed sweat equity) were used to pay off the mortgage on the Property, which would allow it to generate the diverted profits in the first place. (FAC at ¶ 31). It is self-evident that it would be unjust for Defendants to retain the benefits and proceeds associated with the Property after having reneged on their obligations. *See e.g., 14th & Heinberg, LLC v. Terhaar & Cronley Gen. Contractors, Inc.*, 43 So. 3d 877, 880 (Fla. 1st DCA 2010). The challenge to Count 4 fails.

### 3. Count 5 states a plausible constructive fraud claim.

The Defendants challenge Count 5 by arguing Plaintiff has not "allege[d] any basis for a confidential or fiduciary relationship with Sultan's wife and sons." (Mot. at 20). First, this argument effectively concedes the viability of the claim against Sultan. Constructive fraud occurs "when a duty under a confidential or fiduciary relationship is abused or where an unconscionable advantage has been taken." *Am. Honda Motor Co., Inc. v. Motorcycle Info. Network, Inc.*, 390 F. Supp. 2d 1170, 1179 (M.D. Fla. 2005). Such a relationship exists where "confidence is reposed by

one party and a trust is accepted by the other[.]" *Id.* It is distinguished from arms' length transactions. *Id.* In making this argument, Defendants ignore (a) that familial relationships satisfy the "trust and confidence" requirement, and (b) that Sultan's family members are alleged to have aided and abetted his direct fiduciary breaches. *Harrell v. Branson*, 344 So. 2d 604, 607 (Fla. 1st DCA 1977) (court finding a confidential or fiduciary relationship existed between Uncle and Neice, where Niece made false representations to Uncle, had aided him in the past, and promised to do so in the future). (FAC at ¶¶ 98-102). Simply, "[a] fiduciary relation may result from an offer of assistance where the nature of the proposal is one that is naturally calculated to repose confidence and trust in the one making the proposal." *Id.* Like here.

### 4. Count 6 states a plausible civil theft claim

Defendants' position that a pre-suit demand under § 772.11(1), Fla. Stat., is a condition precedent to maintaining a claim for Civil Theft is contrary to settled law. (Mot. at 20-21). Courts within this circuit routinely decline to dismiss nonconforming claims on this basis. *Inglis v. Wells Fargo Bank N.A.*, No. 2:14-CV-677-FTM-29CM, 2017 WL 637485, at *7 (M.D. Fla. Feb. 16, 2017); *Deman Data Sys., LLC v. Schessel*, No. 8:12-CV-2580-T-24, 2014 WL 6751195, at *23 (M.D. Fla. Dec. 1, 2014), *amended on reconsideration*, No. 8:12-CV-2580-T-24, 2015 WL 58650 (M.D. Fla. Jan. 5, 2015); *Cont'l 332 Fund, LLC v. Albertelli*, 317 F. Supp. 3d 1124, 1145 (M.D. Fla. 2018); *In re Tadlock*, No. 3:09-BK-712-PMG, 2010 WL 8320065, at *5 (Bankr. M.D. Fla. Sept. 1, 2010).

Defendants' next argument, that Plaintiff fails to identify "specific funds" that were stolen, is unaccompanied by a single legal citation, providing no basis for dismissal. (Mot. at 21). Regardless, the FAC describes the profits and proceeds stemming at minimum from the commercial and residential leasing of units within the Property, and alleges the Defendants have diverted "[r]ental income, proceeds from prior transactions, and other revenues" arising out of the Property. (FAC at ¶¶, 55-63, 78). The challenge to Count 6 fails.

### 5.  Count 7 states a plausible fraud claim.

Defendants challenge the fraud claim against Sultan because the Complaint purportedly "fails to allege that [statements] were false when made or that Sultan knew they were false" and seek to extricate the remaining Defendants by arguing that any such false statements are attributable "only to Sultan[.]" (See Mot. at 21). For reasons addressed in responding to Defendants' purported "general defect" concerning the pleading of fraud, *supra* Section III.a.4, these arguments lack merit. The FAC details numerous, specific alleged misrepresentations that were knowingly false when made. (*Id.*; FAC at ¶¶ 37, 39, 40, 41, 43, 44, 131). Sultan's family members are alleged to have repeated these falsehoods (FAC at ¶¶ 130a,c), and Defendants ignore their joint liability from participating in the civil conspiracy with Sultan. *Credendo-Short-Term Non-Eu Risks v. Arriola*, 23-24258-CV, 2025 WL 2719950, at *3 (S.D. Fla. Sept. 5, 2025). The challenge to Count 7 fails.

### 6.  Count 8 states a plausible breach of contract claim.

Defendants' contention that Count 8 fails is frivolous. The elements for

breach of contract are: (1) the existence of a contract, (2) breach by the defendant, and (3) damages. *See Boim v. National Data Products, Inc.*, 932 F. Supp. 1402, 1405 (M.D.Fla. 1996). Each of these elements is supported by detailed allegations, as recited *supra*, at 3. The material terms of the contract are identified. (FAC at ¶ 137). As is the consideration provided, including "the payment of various monthly subsidies, reimbursement of expenses, and other payments and benefits to Sultan for his management services, as well as . . . cooperation and contributions to the Property." (*Id.*, ¶ 138). The FAC details the formation of Defendant Tayab, and its purpose as related thereto. (FAC at ¶ 25). It also alleges the parties' acknowledgment and re-affirmation of contractual commitments, including in connection 2006 air-rights sale. (FAC at ¶¶ 26, 27, 33-35, 37, 41). Numerous breaches by Sultan are itemized (*id.*, ¶ 141), as are resulting damages (*id.*, ¶¶ 142-43). The challenge to Count 8 fails.

### 7.  Count 9 states a plausible claim for tortious interference.

Defendants misapprehend the nature of Count 9, an alternative count, for tortious interference. Insofar as the facts may show Sultan's family have led the efforts to deprive Plaintiff and the Siblings of their interests in the Property and proceeds therefrom, potentially without or despite Sultan's knowledge and while isolating him, such Defendants would be deemed to have interfered with the contractual and business relationship existing between Plaintiff and the Siblings on the one hand, and Sultan on the other. (FAC at ¶¶ 145-49). While Plaintiff maintains that the facts presently known support Sultan's knowing participation

in the scheme, Rule 8 expressly allows him to plead "as many separate claims or defenses as [he] has, regardless of consistency," and to plead them "alternatively or hypothetically[.]" Fed. R. Civ. P. 8(d)(2),(3); *Hyskaj v. New York New York Pizza, LLC*, No. 818CV00397MSSTGW, 2018 WL 7458261, at *6 (M.D. Fla. Nov. 14, 2018)*; Joseph v. Chronister*, No. 8:16-CV-274-T-35CPT, 2019 WL 8014507, at *9 (M.D. Fla. Jan. 3, 2019). Defendants' identification of "inconsistencies" as between counts is irrelevant. The challenge to Count 9 fails.

### 8. Count 10 states a plausible claim for civil conspiracy.

Defendants' threadbare 12(b)(6) challenge to Count 10 comprises two sentences labeling the claim as "speculative." (Mot. at 24-25). The FAC, however, alleges in detail Defendants' collective and "systematic withholding of information, stonewalling, threats, and concealment of assets" related to their joint efforts to misappropriate for themselves proceeds relating to the Property. (FAC at ¶¶ 152, 153a-f). These allegations more than suffice at the pleading stage. *Diamond Resorts U.S. Collection Dev., LLC v. Miller*, 6:20-CV-1668-PGB-LRH, 2022 WL 445508, at *7 (M.D. Fla. Jan. 11, 2022) (denying motion to dismiss civil conspiracy claim despite defendant's "conclusory statements" that the allegations were insufficient). The challenge to Count 10 fails.

### IV.   CONCLUSION

Defendants' challenges to the sufficiency of the FAC are without merit. The Motion to Dismiss should be denied.

Respectfully submitted this 24th day of November, 2025.

HOLLAND & KNIGHT LLP

*/s/ Patrick B. Reagin*
J. Allen Maines (FBN 226270)
allen.maines@hklaw.com
Patrick B. Reagin (pro hac vice)
patrick.reagin@hklaw.com
1180 West Peachtree St. NW, Suite 1800
Atlanta, Georgia 30309
Telephone:  (404) 817-8500
Facsimile:   (404) 881-0470

Michael M. Gropper (FBN 105959)
michael.gropper@hklaw.com
Wesley J. Martinez (FBN 1013924)
wesley.martinez@hklaw.com
50 North Laura Street, Suite 3900
Jacksonville, Florida 32202
Telephone:  (904) 353-2000
Facsimile:   (904) 358-1872

*Counsel for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 24, 2025, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will automatically send e-mail notification of such filing to counsel of record.

<u>*/s/ Patrick B. Reagin*</u>
Patrick B. Reagin
*Counsel for Plaintiff*