**United States District Court**
**Middle District of Florida**
**Jacksonville Division**

BASSIR BAYAT,

     Plaintiff,

v.                             **Case No. 3:25-cv-1085-JEP-PDB**

SULTAN BAYAT, PATONIA BAYAT,
MOHAMMAD BAYAT, ALI BAYAT,
SAMAY BAYAT, AL WASAY BAYAT, &
TAYAB REAL ESTATE CO. LTD.,

     Defendants.

_____/

## <u>Defendants' Motion for a Protective Order</u>

The defendants move under Federal Rule of Civil Procedure 26(c) for a protective order prohibiting the plaintiff from (1) propounding oppressive and harassing discovery requests and (2) inquiring into private, immaterial matters during depositions. This case has already created significant undue burdens and expenses for the defendants. Based on the factual background, irregularities in the case history, and the exhaustive discovery already propounded, Court intervention is necessary to protect the defendants from further harassment, undue burden, and undue expense.

### *Background and Procedural History*

This lawsuit arises from family conflict. Plaintiff Bassir Bayat sues his brother Sultan, Sultan's wife (Patoni), Sultan's four adult sons (Matthew, Ali, Samay, and Alwasy), and Sultan's company (Tayab Real Estate Co. Ltd.) in connection with the management of a New York property Tayab owns.[1] *See generally* Doc. 13 (amended complaint). In essence, Bassir alleges that his father emigrated from Afghanistan and bought the New York property to benefit all of the Bayat siblings, Sultan—as the eldest male—was chosen to manage the property, Sultan managed the property for all the siblings' benefit for many years in accordance with a purported oral contract between the siblings, and now the siblings suspect that Sultan and his wife and sons are misappropriating the property's assets. *See generally id.* Bassir alleges that the remaining siblings (Farid, Nassir, Arifa, Ehsanollah, and Ruhullah) assigned him their claims. *Id.* ¶¶ 1, 6, 7.

The defendants deny Bassir's allegations. Sultan emigrated to the United States, worked at another building owned by the then-owner of the New York property, built a close personal relationship with the owner, leased and eventually purchased the New York property, established Tayab to run the property, and never entered any sort of contract, agreement, or other

---

[1]Bassir misidentifies Patoni as *Patonia*, Matthew as *Mohammad*, and Alwasy as *Al Wasay*. *See generally* Docs. 5, 13, 17, 20, 29.

arrangement entitling his siblings to ownership, information, or profits. *See* Ex. A ¶¶ 3–13 (declaration by Sultan); *see also* Ex. B ¶¶ 2–11 (declaration by Salvatore Gaudio). None of Sultan's siblings have ever had any legal or equitable interest in the property. Ex. A ¶¶ 10, 13, 14. Sultan stopped communicating with his siblings following family conflict and based on his belief that his brothers, who operate a business conglomerate including Afghanistan's largest private power company and largest private media channels, are working with Afghanistan's oppressive government. *Id.* ¶¶ 18, 19, 24; *see also* ATN, *Ehsan Bayat,* https://www.arianatelevision.com/ehsan-bayat/ (last visited Jan. 7, 2026) ("Founded by Mr. Ehsanollah Bayat in 2005, Ariana Television and Radio (ATN) are the largest private media channels in Afghanistan[.]"); Bayat Power, *Our Company*, https://bayatpower.com/index.php/our-company/ (last visited Jan. 7, 2026) ("Bayat Power is Afghanistan's largest private Electric Power Production and Development Company. . . . Bayat Power is a division of The Bayat Group. Founded in 2002 by Dr. Ehsan Bayat, . . . .").

Apart from Sultan's suspicions, two significant events ruptured his relationship with his brothers. First, he discovered the existence of a fraudulent will in his name. *See* Ex. A ¶¶ 22, 23. Under the fraudulent will, Bassir and Ehsanollah were appointed executors of his estate. *Id.* Second, after a wedding in Afghanistan, Bassir and Ehsanollah locked Sultan's son Matthew

3

in a room with armed guards and searched his phone. *Id.* ¶¶ 20, 21; Ex. C ¶¶ 1–3 (declaration by Matthew). Sultan believes his remaining siblings support Bassir and Ehsanollah. *See* Ex. A ¶ 24. Since ending communication, several siblings have harassed Sultan, his wife, and his sons. *Id.* ¶ 25; Ex. C ¶ 6.

Against this backdrop, Bassir filed this lawsuit, which Sultan and his family believe is an attempt to harass and financially ruin them. *See* Ex. A ¶ 46. In addition to filing twelve unsupported and unsupportable claims,[2] Bassir has propounded extensive discovery. *See generally* Ex. D (requests for production); Ex. E (interrogatories); Ex. F (requests for admission). Among other information and documents, he requests essentially every business record from Tayab's nearly-35-year history; the identities of, documents provided to or received from, and communications with all lawyers, bookkeepers, accountants, financial advisors, and investment advisors any of the defendants have hired for any purpose over the past 35 years; all communications any defendant has *ever* had with *anybody* pertaining to the New York property; all communications any defendant has *ever* had with *anybody* pertaining to the Bayat siblings; home addresses, contact information, and social media accounts for each defendant for the past 19 years; details of

---

[2]Not only do the defendants deny all material allegations, but Bassir has not even alleged any specific conduct by four of them (Tayab, Ali, Samay, and Alwasy). *See generally* Doc. 13. His allegations of specific conduct by Patoni and Matthew are minimal. *See generally id.* And almost all of the allegations throughout the amended complaint are speculative or conclusory. *See generally id.*

the defendants' individual incomes; Sultan's medical records and all other documents in any way related to his health; and substantial other information unrelated to any of the claims or defenses or disproportional to the needs of the case. *See generally* Exs. D, E, F.

Nearly all of the requests are facially overbroad, irrelevant, oppressive, or otherwise improper. As a small sample of unanswerably broad requests, Bassir asks for "all documents that [the defendants] may use at any hearing or trial or in support of or in opposition to any motion in this matter," "all documents that [the defendants] may use to support and/or refute any claims and/or defenses in this case," "all documents that reflect, refer, relate to, evidence, and/or concern, any fact that [the defendants] contend supports or tends to support, or that refutes, the claims in the Amended Complaint or the responses and affirmative defenses in [the] answer thereto," and "all documents that support, reflect, refer, relate to, evidence, and/or concern, each argument made in [the] Motion to Dismiss the Amended Complaint and any affirmative defense asserted in [the] Answer and Affirmative Defenses to the operative Amended Complaint." Ex. D at 8, 15. (The motion to dismiss is pending, and no answer or affirmative defenses have been filed.)

As a small sample of improper interrogatories designed to force an exhaustive or oppressive catalogue of information, Bassir has propounded the following:

**INTERROGATORY NO. 4:** Describe in specific detail all income, revenue, profits, proceeds, or other benefits generated by or derived from the Property, and expenses incurred in connection with the Property, on a quarterly basis from its acquisition to the present, including but not limited to all rental income from commercial and residential tenants, and further state or identify for each source of income or expense the gross amount received or paid, the date of receipt or payment, and the identity of the payor or payee, and all documents that reflect, refer to or relate to the information requested in this interrogatory[.]

**INTERROGATORY NO. 5:** Identify all bank, brokerage or financial accounts that have received or held any monies generated by or derived from the Property from its acquisition to the present, and further state or identify the name of the institution, the name and number associated with the account, all signatories, dates opened and closed and current balances.

**INTERROGATORY NO. 10:** State or identify each bookkeeper, accountant, lawyer, investment or financial advisor that has provided services for any Defendant from acquisition of the Property to the present, and further state or identify all documents and communications from or to each such person or institution.

**INTERROGATORY NO. 11:** State or identify each e-mail address; social media, instant messaging, or chat address, account or profile; telephone number and corresponding carrier; and physical residence address used by each of the Defendants since 2006 to the present.

Ex. E at 6–8. Several of the interrogatories involve multiple discrete subjects, multiplying the actual number of interrogatories to well beyond the facial number. *See generally id.*

Along with propounding oppressive discovery requests, Bassir advised through counsel that he intended to set Sultan's deposition for January 8, 2026. *See* Ex. G at 6 (Dec. 4, 2025, email). When the defendants' counsel responded that Sultan was recovering from a stroke and they would confirm when he would be able to sit for a deposition, Bassir's counsel demanded

extensive and immaterial information, including details of Sultan's treatment, "the financial institutions, accountants, lawyers and professionals currently utilized by Tayab," details of the recent sale of Sultan's home, each defendant's "place of business," and each defendant's residential and employment addresses. *Id.* at 4–5. Bassir's counsel advised that if he did not receive the information within two business days, he would unilaterally set depositions. *Id.* at 5. By contrast, Bassir's counsel have not provided deposition dates in response to the defendants' three separate requests. *See id.* at 4 (first request, Dec. 8, 2025); 2 (second request, Dec. 19, 2025); 1 (third request, Dec. 31, 2025). Nearly a month after the first request, Bassir's counsel advised that they "are checking on whether [they] will be representing the Bayat Siblings" and "expect to be back to [the defendants' counsel] by the end of next week [January 16, 2026]."[3] Ex. H at 1 (email from Jan. 5, 2026). During a videoconference on January 6, 2026, Bassir's counsel indicated that they will not make Bassir available for deposition before Sultan is deposed, regardless of depositions of other defendants. Bassir's counsel also indicated that they intend to depose the defendants on personal matters that the defendants consider beyond the scope of discovery. That evening, Bassir's counsel served notices of depositions of

---

[3]In his initial disclosures, Bassir identified the other Bayat siblings as potential witnesses and provided addresses in care of his counsel. *See* Ex. I at 2–4.

Matthew and Tayab's corporate representative.[4] Exs. K, L.

Apart from propounding oppressive discovery, refusing to sit for a deposition himself until Sultan—who is recovering from a stroke—is deposed, and nevertheless noticing depositions of other defendants, Bassir filed a purportedly time-sensitive motion to appoint a receiver over Tayab and the New York property.[5] Doc. 29. As addressed in detail in the defendants' response, the motion is unfounded. *See generally* Doc. 34. In particular, Bassir bases the motion on Sultan's purported incapacity, but Sultan is *not* incapacitated, *see* Ex. A-1 (assessment from Sultan's physician: "Sultan . . . has physical limitations due to the stroke and is undergoing physical therapy right now. He is mentally competent[.]"), counsel never indicated that Sultan is incapacitated, Ex. G at 3 ("I also did not use the word 'incapacitated' in my email."), and Bassir himself "does not believe" that Sultan is incapacitated, *id.*

---

[4]Topics on which Bassir intends to depose Tayab's corporate representative include the sale of Sultan and Patoni's *personal* home, "[a]uthentication of the email addresses, webpages and social media pages and bank accounts used by any Defendant," "[a]ll communications between and among the Defendants," "[t]he time and place where Sultan Bayat's stroke occurred, the doctors and medical facilities treating him, and the dates treatment was received," and "[t]he residence and business or employer's addresses of each Defendant on the date the Complaint and/or Amended Complaint in this action were filed." Ex. L ¶¶ 36–38, 40–43.

[5]Bassir filed the motion for appointment of a receiver the Friday before the winter holidays and after being advised that the defendants' counsel would be traveling for the holidays. *See* Doc. 29 (filed Dec. 19, 2025); Doc. 31-1 at 3 ("I am on vacation in Colorado with my family from Christmas through December 31."). The deadline to respond was the Friday before the Monday deadline to respond to the extensive discovery requests. Bassir agreed to consent to an extension on the condition that the defendants would not sell the New York property "during the pendency of the receivership proceedings," Doc. 31-1 at 1, which the defendants had not indicated they intended to do but which Tayab has the right to do.

at 4 ("Our client does not believe that Mr. Bayat is incapacitated[.]").[6] Bassir requests a receiver of his own choosing. Doc. 29 at 14.

Three final issues provide important context. First, Bassir's claims are based on substantial, verifiable inaccuracies and inconsistencies. For example, fundamental to his theory of the case is the incorrect assertion that Sultan is the eldest male Bayat sibling. Bassir alleges that his father acquired the New York property and entrusted it with Sultan *as the eldest male*. Doc. 13 ¶ 24. Bassir explains that this arrangement "adhered to Afghan social norms, . . . in which the collective financial wellbeing and security of the family is regularly entrusted to the eldest male heir." Doc. 13 ¶ 24. But the eldest male is Farid— not Sultan. Ex. A ¶ 2.

In addition to the error of the Bayat siblings' birth order, allegations in the purportedly verified complaint and amended complaint are inconsistent with Bassir's counsel's contemporaneous representations to the defendants' New York counsel regarding the distribution of the proceeds from an alleged 2006 sale of air rights. Whereas in the original and amended complaint, Bassir alleges that the sale was "[a] defining moment in th[e] period of proper management," that the proceeds "were distributed among the Siblings in

---

[6]The motion for appointment of a receiver contains significant inaccuracies, including a false assertion that the defendants evaded service and unfounded speculation that Sultan's family are misappropriating assets from the New York property. *See generally* Doc. 29; *see also* Doc. 34 (response). Bassir does not attempt to substantiate these assertions with any evidence.

accordance with their agreed-upon shares," and "[e]ach Sibling received a direct payment," Doc. 5 ¶¶ 32, 33; Doc. 13 ¶¶ 33, 34, the same lawyer who signed the complaint and amended complaint represented in a letter to the defendants' New York counsel that Ehsanollah "never received a penny from the sale," Ex. J at 1–2. Bassir filed the original complaint in state court on July 24, 2025, Doc. 5 at 41, his counsel sent the letter to New York counsel on August 14, 2025, Ex. J at 1, and Bassir filed the amended complaint in this Court on October 20, 2025, Doc. 13 at 52. Bassir asserts that the sale of air rights and alleged distribution of proceeds "confirms the terms and existence of" the purported contract. Doc. 13 ¶ 33.

Second, the case is barred by the statute of frauds. Bassir asserts that Sultan and the Bayat siblings entered an "oral contract" under which Sultan would manage the New York property for the siblings' collective benefit in perpetuity. *See generally* Doc. 13. He provides no dates (and few other details) of the purported contract, but the property was acquired in 1991. Ex. A ¶ 7; Ex. B ¶ 4. Under Florida law, no claim may be brought on a contract that cannot be performed within a year unless the agreement is memorialized in writing signed by the party to be charged. Section 725.01, Fla. Stat. This statute bars not only breach-of-contract claims, but all claims deriving from the oral contract. *See Hertz v. Salman*, 718 So. 2d 942, 942 (Fla. 3d DCA 1998) ("The other claims brought by plaintiff are likewise barred, as they flow from

10

the alleged oral contract, and are merely derivative."). Because all of Bassir's claims derive from the purported oral contract, *see generally* Doc. 13, all of his claims are barred.[7]

Third, the Court lacks personal jurisdiction over *all seven* defendants. *See* Docs. 27-1 to -6 (declarations). Tayab is a New York corporation with its principal place of business in New York, and it conducts no business in Florida. Doc. 27-1 ¶¶ 8, 10–12. Sultan, Patoni, Matthew, Samay, and Alwasy are Virginia citizens, and Ali is a New Jersey citizen. *See* Docs. 27-1 to -6. None of them have traveled to Florida in years. *See id.* Two have not traveled to Florida in a decade. Docs. 27-2, 27-4.

Bassir's purported basis for personal jurisdiction over Sultan is that he allegedly made representations the Bayat siblings "now recognize" were false, these representations were made in Florida or through communications directed to Florida, and Sultan failed to distribute unidentified assets to unidentified Bayat siblings in Florida. *See* Doc. 13 ¶¶ 6, 40–43, 90 (allegations); Doc. 25 at 6–7 (response to motion to dismiss). Bassir's purported

---

[7]Florida imposes a four-year limitation on actions founded on oral contracts, fraud, intentional torts, statutory liability, and any cause of action not specifically assigned a different limitation period. Section 95.11(3)(e), (i), (j), (n), & (o). Bassir's alleged claims consist of violation of the Florida Deceptive and Unfair Trade Practices Act, breach of fiduciary duty and aiding and abetting fiduciary duty, conversion, unjust enrichment, constructive fraud, civil theft, fraud, breach of contract, tortious interference with business and contractual relations, civil conspiracy, appointment of receiver and injunctive relief, and declaratory relief. Doc. 13 ¶¶ 87–168. Bassir provides no dates and few time frames, *see generally id.*, but to the extent his claims allegedly accrued more than four ago, the claims are barred by the statute of limitations as well as the statute of frauds.

basis for personal jurisdiction over Patoni, Matthew, Ali, Samay, and Alwasy is that they are "co-conspirators" with Sultan.[8] Doc. 25 at 7–8. But his alternative theory of liability is that Patoni, Matthew, Ali, Samay, and Alwasy conspired with *each other*—not Sultan—to exploit Sultan's alleged incapacity. *See, e.g.*, Doc. 13 ¶ 73 ("Whether acting in concert with Defendant Sultan . . . or exploiting Defendant Sultan's true diminished capacity . . . .").

As argued in more depth in the motion to dismiss the amended complaint, Sultan's alleged contacts with Florida are insufficient to establish personal jurisdiction over him, and the conspiracy allegations are insufficient to state a conspiracy claim, let alone establish personal jurisdiction over Sultan's family as co-conspirators. *See* Doc. 16 at 6–11 (motion to dismiss). And to the extent Bassir pursues his alternative theory of liability—that Sultan was not part of his family's alleged conspiracy—no basis for personal jurisdiction over Sultan's family as alleged co-conspirators is even possible. In light of the lack of jurisdiction, Bassir's oppressive discovery requests are particularly prejudicial.[9]

---

[8]Bassir's purported basis for jurisdiction over Tayab is unclear. He asserts that the Court has jurisdiction because it purposefully committed a tort in Florida and breached a contract in Florida. Doc. 13 ¶¶ 19, 20. But he alleges no facts suggesting that Tayab committed either alleged improper action. *See generally id.* Although he asserts "upon information and belief" that Tayab is Sultan's "alter ego," *id.* ¶ 8, he provides no facts to support this assertion and fails to otherwise explain his alter-ego theory.

[9]The defendants moved to stay discovery, Doc. 14, and the Court denied the motion, Doc. 18. The defendants respect the Court's decision, have been participating in discovery in good faith, and will continue to do so. Nevertheless, they maintain their jurisdictional

Under the circumstances—the lack of personal jurisdiction, the statutory bar on the suit, the lack of foundation for the claims, the errors and inconsistencies in Bassir's representations, the family history of conflict and harassment, and, most importantly, Bassir's facially improper and oppressive discovery so far and his own refusal to sit for a deposition—an order limiting discovery and protecting Sultan, Patoni, Matthew, Ali, Samay, Alwasy, and Tayab from further annoyance, embarrassment, oppression, and undue burden and expense is necessary.

### *Law and Argument*

A discovery request must not be "interposed for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation." Fed. R. Civ. P. 26(g)(1)(B)(ii). A discovery request must further be "neither unreasonable nor unduly burdensome or expensive[.]" Fed. R. Civ. P. 26(g)(1)(B)(iii). A "court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense[.]" Fed. R. Civ. P. 26(c)(1). Permitted orders include "forbidding the disclosure or discovery" and "forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters." Fed. R. Civ. P.

---

arguments, dispute that the discovery requests Bassir has already served are permitted under the Federal Rules of Civil Procedure or the Court's Discovery Handbook, and ask the Court to limit discovery as permitted under Rule 26(c).

26(c)(1)(A) & (D).

Under the Federal Rules of Civil Procedure, discovery is limited to "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). In the Middle District of Florida, a request for production "should be clear, concise, and reasonably particularized." Middle District Discovery (2021) at Section III.A.1. "Interrogatories should be brief, simple, particularized, unambiguous, and capable of being understood by jurors when read in conjunction with the answer. They should not be argumentative nor should they impose unreasonable burdens on the responding party." *Id.* at Section IV.A.2. "Interrogatories that purport to require a detailed narrative of the opposing parties' case are generally improper because they are overbroad and oppressive." *Id.* at Section IV.C.2. Similarly, "[i]nterrogatories designed to force an exhaustive or oppressive catalogue of information are generally improper." *Id.* at Section IV.C.4.

The United States Court of Appeals for the Eleventh Circuit has described various costs and burdens of discovery: "These burdens include the time spent searching for and compiling relevant documents; the time, expense, and aggravation of preparing for and attending depositions; the costs of copying and shipping documents; and the attorneys' fees generated in interpreting discovery requests, drafting responses to interrogatories and

14

coordinating responses to production requests, advising the client as to which documents should be disclosed and which ones should be withheld, and determining whether certain information is privileged." *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1367 (11th Cir. 1997).

Here, Bassir's discovery requests violate Rule 26 and the principles in the Middle District Discovery Handbook. Much of the requested discovery is wholly irrelevant to any claim or defense. Numerous other requests pertain to potentially relevant information but are extraordinarily disproportional to the needs of the case. Most requests for production are so broad that compliance would be not only an enormous burden but virtually impossible. Most interrogatories are designed to force an exhaustive or oppressive catalogue of information. Many of the costs and burdens described in *Chudasama* are present here. *See* Ex. A ¶¶ 45, 47 (the "lawsuit has created an enormous burden" and the defendants "have already spent tens of thousands of dollars responding to Bassir's various filings and attempting to comply with discovery requests"). And in light of the circumstances underlying the case and the procedural history so far, the discovery requests are clearly interposed for an improper purpose.

Notwithstanding the irrelevance, disproportionality, and undue burden of the discovery requests so far, the defendants have been working in good faith to identify documents and information relevant and proportional to the needs

of the case, and they will continue to do so. However, based on the discovery to date, the defendants anticipate substantial future undue burden and expense as well as significant and improper intrusions into private matters. Protection from the Court is therefore necessary.

The defendants' particular topics of concern include carte blanche requests pertaining to their home addresses, social media, and personal contact information; health and medical information; individual financial information; and personal employment of legal, financial, and other professionals. These topics are inherently private and sensitive, and in light of the Bayat siblings' harassment over the years, *see, e.g.*, Ex. A ¶ 25; Ex. C ¶ 6, the defendants are troubled by Bassir's efforts to obtain extensive, largely irrelevant, and wholly disproportional details. While the defendants are willing to work with Bassir on targeted, relevant, proportional discovery, blanket requests are annoying, oppressive, and unduly burdensome. Divulging information on some of the identified topics is also likely to cause substantial embarrassment.

Based on Bassir's counsel's representation regarding deposition questions, the nature of the discovery requests already propounded, and the generally aggressive tenor of this case, the defendants anticipate further oppressive discovery. Responding to discovery thus far has required substantial time and expense. The defendants should not be required to

16

continue to expend the same level of resources responding to future oppressive requests. They therefore ask the Court to enter an order under Rule 26(c)(1) protecting them from annoyance, embarrassment, oppression, undue burden, and undue expense by prohibiting the following:

(1) oppressive, harassing, irrelevant, disproportional, overbroad, or otherwise inappropriate discovery requests, including the following types and topics:

    a. requests for documents and communications unlimited in time or scope;

    b. requests for documents and communications spanning decades;

    c. requests for exhaustive catalogues of information;

    d. blanket requests for the defendants' home addresses, social media, and personal contact information;[10]

    e. requests for the defendants' health and medical information;[11]

    f. requests for the defendants' individual financial information,

---

[10]The defendants are not asking the Court to forbid Bassir from inquiring into specific, relevant communications sent or received by any defendant. However, discovery of specific communications does not require broad discovery of personal contact information. Because Bassir and other Bayat siblings have been harassing the defendants for years, *see* Ex. A ¶ 25; Ex. C ¶ 6, the defendants are particularly concerned that personal information obtained in this case may be misused.

[11]Although Bassir *speculates* that Sultan is incapacitated, he has alleged no material facts to support his speculation, and in any case, Sultan's physician has provided confirmation that Sultan is *not* incapacitated. Ex. A-1. Considering various Bayat siblings' harassment of Sultan and his family, and intrusion into their personal affairs, Sultan and his family are alarmed at the idea of Bassir obtaining their private health information.

apart from specific requests pertaining to finances related to the New York property;

g. requests for information pertaining to the defendants' personal employment of, and relationship with, any professionals of any nature, apart from specific requests pertaining to employment of professionals in connection with the New York property, and only as relevant to the claims and defenses; and

h. requests regarding any other matter irrelevant to any claim or defense or disproportional to the needs of the case; and

(2) using depositions to harass and oppress the defendants, including by prohibiting Bassir from inquiring into the following topics at depositions:

a. the defendants' home addresses, social media, and personal contact information;

b. the defendants' health and medical information;

c. the defendants' individual financial information, apart from specific requests pertaining to finances related to the New York property;

d. the defendants' employment of, and relationship with, any professionals of any nature, apart from specific requests pertaining to employment of professionals in connection with

18

the New York property, and only as relevant to the claims and defenses; and

e. any other matter irrelevant to any claim or defense or disproportional to the needs of the case.

The defendants do not ask the Court to prohibit the plaintiff from specific, proportional inquiries into relevant matters. However, the discovery thus far has been extraordinarily intrusive, and the defendants should not have to continue to respond to oppressive and facially improper discovery.

### *Conclusion*

The defendants dispute all material allegations and the validity of the lawsuit in the first place. Based on the family history of conflict and harassment, they are particularly concerned by the invasive requests for their private, sensitive information. Moreover, the discovery requests already propounded are oppressive and clearly interposed to harass the defendants and needlessly increase the costs of litigation. The defendants have expended substantial resources responding to Bassir's first round of requests, and they should not be forced to continue to bear the costs of responding to and disputing facially unreasonable and impermissible discovery requests.

WHEREFORE, defendants Sultan Bayat, Patoni Bayat, Matthew Bayat, Ali Bayat, Samay Bayat, Alwasy Bayat, and Tayab Real Estate Co. Ltd. ask the Court to enter an order protecting them from further annoyance,

19

embarrassment, oppression, and undue burden and expense as outlined above.

## Rule 26(c) and Local Rule 3.01(g) Certification

Counsel for the defendants conferred in good faith with counsel for the plaintiff by videoconference on January 6, 2026. The plaintiff does not agree to the relief requested in this motion.

Respectfully submitted on January 7, 2026.

**MURPHY & ANDERSON, P.A.**

/s/ *Niels P. Murphy*
**NIELS P. MURPHY**
Florida Bar No. 0065552
nmurphy@murphyandersonlaw.com
gherman@murphyandersonlaw.com
**VANESSA GRAY**
Florida Bar No. 1025497
vgray@murphyandersonlaw.com
1501 San Marco Boulevard
Jacksonville, Florida 32207
(904) 598-9282
*Attorneys for Defendants*