**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

BASSIR BAYAT,

         Plaintiff,

    v.

SULTAN BAYAT, PATONIA BAYAT,
MOHAMMAD BAYAT, SAMAY BAYAT, AL
WASAY BAYAT, and TAYAB REAL ESTATE
CO., LTD.,

         Defendants.

Case No. 3:25-CV-1085

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT SULTAN
BAYAT'S EMERGENCY MOTION FOR A PROTECTIVE ORDER**

Plaintiff Bassir Bayat ("Plaintiff") respectfully opposes Defendant Sultan
Bayat's Emergency Motion for a Protective Order (Dkt. 62) (the "Motion"). The
Motion seeks: (1) an order prohibiting Plaintiff from deposing Sultan on March 31,
2026, or any other date absent medical clearance, and (2) an order upholding the
designation of Sultan's medical report as "attorneys' eyes only." Both requests
should be denied.

As set forth fully in Plaintiff's simultaneously filed Response in Opposition
to Defendant Sultan Bayat's Time-Sensitive Motion to Appoint a Guardian Ad
Litem (the "Guardian Response"), Defendants have engaged in a troubling pattern
of shifting and internally inconsistent representations about Sultan's health
throughout this litigation, seemingly deploying medical evidence strategically to
obstruct discovery. (*See* Guardian Response at 1-15.)

1

## FACTUAL BACKGROUND[1]

The factual record is set forth in the Guardian Response and incorporated herein. The following summary highlights the facts most directly relevant to the protective order analysis.

Sultan's deposition has been a central point of contention in this case. After Defendants initially delayed the deposition by claiming he had suffered a stroke and required assistance with all activities of daily living, Plaintiff filed a Motion for Appointment of Receiver in December 2025. (Dkt. 29.) Defendants then abruptly reversed course—minimizing Sultan's limitations and emphasizing his mental competence. (*See* Guardian Response at 3-4.) At a February 5, 2026 hearing, Judge Barksdale expressed skepticism about Defendants' position that Sultan could not be deposed, observing that Dr. Alsamman's January 2, 2026 note "suggested that he could sit for a deposition." (Dkt. 72-1, Hr'g Tr. at 45.) The Court instructed Plaintiff to notice Sultan's deposition, placing the burden squarely on Defendants to demonstrate otherwise. (*Id.* at 48.)

The Court specified that if Defendants wished to prevent the deposition, defense counsel would "just . . . have to prove that up, including . . . explaining to

---

[1] Defendants devote large sections of the brief in support of their Motion re-hashing Motion to Dismiss arguments, such as a purported lack of personal jurisdiction, and characterizing Plaintiff's allegations and/or discovery responses. Plaintiff disagrees with these characterizations. Among other things, they wholly omit the current status of the parties' discussions concerning discovery, including Plaintiff's confirmation to Defendants that he is preparing to produce additional documents and supplement interrogatory responses as his ongoing efforts to identify responsive information continue. Regardless, none of those issues are before the Court, and Plaintiff focuses this response on those that are: (a) Sultan's capacity to sit for a deposition, and (b) whether Dr. Alsamman's note should be designated AEO.

2

the doctor what the deposition would entail, which is, I assume, seven hours or less of questioning with appropriate breaks." (*Id.*) The Court noted that the deposition could "be done in a place to accommodate him, for example, his home maybe or a court reporter's office that's close by or somewhere where he'd be most comfortable," and that "his physical limitations could be accommodated." (*Id.* at 48-49.) Judge Barksdale emphasized the critical importance of this deposition: "[T]he deposition's really important here. And the case is just going to stagnate without it." (*Id.* at 49.)

Plaintiff noticed Sultan's deposition for March 24, 2026, and at Defendants' request agreed to reschedule it to March 31, 2026. Now, barely a week before the rescheduled deposition, Defendants have filed the instant Motion, supported by a third report from Dr. Alsamman. (*See* Guardian Response at 13-14.) This third note reveals for the first time that Sultan purportedly suffered a second stroke between January 7 and 8, 2026—a fact concealed from the Court and Plaintiff for over two months while arrangements for Sultan's deposition were being discussed, including during the February 5 discovery hearing. This assertion is directly contrary to the sworn testimony of Sultan's sons, who testified that their father was at home and had suffered only one stroke, in 2025. (Dkt. 61-1; Dkt 73-1, M. Bayat Dep. Tr. at 305:25; 306:16-19 ; Dkt. 73-2, A. Bayat Dep. Tr. at 114:5-12; 210:2-6.) As detailed in the Guardian Response, these inconsistencies render the current medical evidence unreliable.

3

## ARGUMENT

### I.    The Protective Order Standard Requires More Than Defendants Have Shown.

Under Federal Rule of Civil Procedure 26(c)(1), a court may enter a protective order for "good cause" to protect a party from "annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26. The burden of establishing good cause rests squarely on the movant. A request to prohibit a deposition altogether is "extraordinary" relief. As the court in *Wolf v. College of the Holy Cross* , No. 20-14244, 2020 WL 8258338 (S.D. Fla. Dec. 31, 2020), explained, a court may prohibit a "witness from being deposed entirely" only "[u]nder extraordinary circumstances." *Id.* at *6. "One of those rare circumstances that may preclude the taking of a deposition altogether is the medical incapacity of a witness to attend and sit through a deposition," and "[a]nother is when participating in a deposition would threaten the witness' health or life." *Id.* at *6. Critically, "[a] party seeking to prevent a deposition on medical grounds must make a specific and documented factual showing that the deposition will be dangerous to the deponent's health." *Id.* (cleaned up).

Defendants have not made that showing. As set forth in the Guardian Response, the record before the Court consists of three notes from the same physician—Dr. Alsamman—whose assessments have tracked Defendants' shifting litigation strategy at each stage: emphasizing Sultan's total dependence to block a deposition, minimizing his limitations to block a receiver, and now asserting incapacitation to block a deposition once again. (*See* Guardian Response at 2-15.)

4

While Defendants characterize Dr. Alsamman's most recent note as "sworn," it is not. It appears simply to have been notarized, which does not convert it into sworn testimony given under penalty of perjury or make its contents anything other than unverified hearsay. Meanwhile, Sultan has continued to participate in the case by filing numerous detailed declarations to support Defendants' positions.

Defense counsel's representations about their March 3, 2026 videoconference with Sultan also are insufficient to carry Defendants' burden. (Dkt. 62 at 5.) Given the shifting and contradictory medical evidence, the inconsistent sworn testimony of Sultan's sons, and the pattern of strategic disclosures detailed in the Guardian Response, defense counsel's representations about Sultan's condition do not justify preventing the deposition—at least not until Plaintiff is afforded the opportunity to conduct the discovery identified in the Guardian Response.

Moreover, defense counsel has not explained why they waited 20 days between the March 3 videoconference—during which they claim Sultan was in bed and could barely communicate—and seeking a protective order, even while requesting a scheduling accommodation for defense counsel concerning the deposition date. Notably, in an e-mail one day before the alleged March 3 interaction, defense counsel confirmed to Plaintiff's counsel: "Sultan's sons have indicated that Sultan is recovering well and doing substantially better than we previously understood." (Dkt. 62-2 at 2102). This delay is particularly difficult to reconcile with the fact that during this same period, Defendants had pending briefs

opposing the appointment of a receiver on the express grounds that Sultan was <u>not</u> incapacitated, and yet took no steps to update the Court or Plaintiff as to this dramatic change in circumstance. (*See* Dkt. 34 at 13) ("Bassir's purported basis— that Sultan is incapacitated—is false.") Also, if Dr. Alsamman's third note is to be believed, Sultan was on the mend before January 2026, raising the question why Defendants were claiming at that time that he'd be unable to sit for a deposition before June at the earliest, which Judge Barksdale confirmed during the February discovery hearing the record did not support.

The inadequacy of Defendants' medical evidence is further confirmed by the well-established principle that doctors' notes are insufficient to support an order barring a deposition where they "do not indicate what information was provided to the doctor about the proposed deposition and whether, were the deposition parameters known, the deponent would still be unable to participate." *NuCal Foods, Inc. v. Quality Egg LLC* , 2012 WL 6629573, at *2 (E.D. Cal. Dec. 19, 2012). Courts have consistently held that a physician's letter is insufficient to support a protective order where it "did not indicate that he was privy to what the deposition would entail, such that he could properly and specifically explain how it would harm or exacerbate [the witness's] health problems." *Schneider v. Chipotle Mexican Grill, Inc.* , 2017 WL 3124014, at *5 (N.D. Cal. Jul. 24, 2017); *see also Blackwood v. Vries* , 2015 WL 13914965, at *4 (C.D. Cal. Aug. 13, 2015) (same); *Cary v. Automobile Ins. Co. of Hartford, Connecticut* , 838 F. Supp. 2d 1117, 1124–25 (D. Colo. 2011) (same).

None of Dr. Alsamman's three unsworn notes indicates what information the doctor was provided about the nature of the proceedings—precisely the deficiency Judge Barksdale identified at the February 5 hearing when she instructed defense counsel that they would "have to prove that up, including . . . explaining to the doctor what the deposition would entail." (Dkt. 72-1, Hr'g Tr. at 48.) As the *NuCal* court observed, "[a] request to deny a deposition altogether is extraordinary and is usually denied." 2012 WL 6629573, at *2. Defendants' medical evidence falls far short of the required "specific and documented factual showing."

Finally, to the extent Defendants characterize Plaintiff's discovery conduct to deflect attention from the merits, Plaintiff denies those characterizations. Those issues are not before the Court and can be addressed through the parties' conferral obligations and separate motions as necessary. This Motion concerns Sultan's deposition and the confidentiality of a doctor's note, nothing else.

## II.   The Inconsistencies in the Record Preclude a Finding of Good Cause on the Current Record.

Beyond the facial inadequacy of Dr. Alsamman's notes, the factual inconsistencies preclude a finding of good cause. These are detailed in the Guardian Response and briefly summarized here.

First, Sultan's sons provided sworn testimony incompatible with Dr. Alsamman's latest report. Matthew Bayat testified on February 19, 2026—a month after the purported second stroke—that his father was at home, appeared "not at

all" limited or impaired, was "very strong," and "seems the way that he's always been." (Dkt. 73-1, M. Bayat Dep. Tr. at 305:25; 306:16-19.) Ali Bayat testified on February 26, 2026 that Sultan had suffered only one stroke—in mid-May 2025— and expressly denied knowledge of any second stroke. (Dkt. 73-2, A. Bayat Dep. Tr. at 114:5-12.)[2]  This testimony is irreconcilable with Dr. Alsamman's statements that Sultan was, at the same time, undergoing "intensive rehabilitation" after a second stroke.[3]

Second, as related by Dr. Alsamann, the second stroke would have occurred on January 7–8, 2026, a mere five to six days after Dr. Alsamman's January 2, 2026 note submitted by Defendants to the Court to emphasize Sultan's competency in opposing Plaintiff's Motion to Appoint a Receiver, yet Defendants did not disclose this fact for approximately two and a half months—not until the eve of Sultan's deposition. (Dkt. 61-1.) During that period, Defendants continued to litigate the receivership motion (emphasizing Sultan's competence) and discuss deposition scheduling without mention of a second stroke. This includes at a February 5th discovery hearing before Judge Barksdale where these issues were discussed extensively. Plaintiff is left, unfortunately, to infer that either Dr.

---

[2] Defense counsel agreed on March 2, 2026 that that the sons' testimony reflected as much. (Dkt. 62-2 at 2102).

[3] Defendants' own acknowledgment of this conflict is telling.  Despite previously agreeing with Plaintiff's characterization of the sons' testimony, in their Motion, Defendants now suggest that Matthew's and Ali's testimony may have contained "miscommunications" that need to be addressed (Dkt. 62 at 6, n.4)—notwithstanding that the time for submitting errata on those depositions has long passed. This concession that Dr. Alsamman's notes are in direct conflict with the sworn testimony taken in this case to date simply underscores the need for the further discovery identified in this response and in the Guardian Response.

Alsamann is facilitating a pretextual effort to prevent Sultan's deposition, or that Defendants sat on this information until the eleventh hour to disrupt Sultan's deposition setting.  Either way, further information is necessary before preventing the deposition.

Third, Dr. Alsamman's prior notes have shifted to align with Defendants' litigation needs: the December 2025 note described Sultan as needing help with "all" activities of daily living, while the January 2026 note minimized his limitations to oppose a receiver, and now the March 2026 note reasserts incapacitation to block the deposition. (*See* Guardian Response at 2-15.)

These inconsistencies, the suspicious timing of Defendants' disclosures, and the troubling indicia of potential elder abuse detailed in the Guardian Response collectively preclude a finding of good cause on the current record.

## III.   At a Minimum, the Court Should Defer Ruling Pending Further Discovery.

Rather than granting the extraordinary relief of barring Sultan's deposition entirely, the Court should deny the Motion or, at minimum, defer ruling pending the limited discovery Plaintiff has requested in the Guardian Response. Specifically, Plaintiff has requested the opportunity to: (1) depose or cross-examine Dr. Alsamman regarding his assessment; (2) obtain Sultan's pertinent medical records; (3) have Sultan examined by an independent physician; and (4) participate in a supervised visit of Sultan. (*See* Guardian Response at 20-21.)

An independent medical examination is particularly warranted. Where the sole medical evidence comes from a physician whose prior assessments have shifted with Defendants' litigation objectives, the Court and parties are entitled to an objective, independent evaluation. Federal Rule of Civil Procedure 35(a) authorizes the Court to order a party whose "mental or physical condition . . . is in controversy to submit to a physical or mental examination by a suitably licensed or certified examiner" upon good cause shown.[4] Sultan's condition is plainly in controversy, and good cause is established by the record.

The Court also has ample authority to fashion accommodations short of barring the deposition entirely. As Judge Barksdale noted at the February 5, 2026 hearing, Sultan's deposition could "be done in a place to accommodate him, for example, his home maybe or a court reporter's office that's close by or somewhere where he'd be most comfortable," and that "his physical limitations could be accommodated." (Dkt. 72-1, Hr'g Tr. at 48-49.) These accommodations—along with reasonable time limits, breaks, or other modifications—provide a far more proportionate response than the blanket prohibition Defendants seek.

## IV.   The Attorneys' Eyes Only Designation Should Not Be Upheld.

The Motion also asks the Court to uphold the designation of Dr. Alsamman's medical report as "attorneys' eyes only" under the parties' confidentiality agreement. (Dkt. 62 at 7-8.) This request should be denied.

---

[4] As of the filing of this response, Plaintiff has not received a response from Defendants as to their position regarding an Independent Medical Examination.  Plaintiff anticipates promptly moving for same upon receipt of Defendants' position with respect thereto.

The parties' confidentiality agreement provides that material may be designated "Attorneys' Eyes Only" upon a "good-faith determination that the material contains highly sensitive personal information or highly sensitive financial or business information where disclosure to another party could result in substantial harm to the disclosing party." (Dkt. 62-5, Confidentiality Agreement § 2(b).) The agreement further provides that in any dispute over designation, "the party or non-party seeking such designation has the burden to prove that the designation is proper." (*Id.* § 6.)

Plaintiff does not dispute that medical information can be sensitive. But the "attorneys' eyes only" restriction goes beyond shielding information from the public record—it purports to prevent Plaintiff's counsel from discussing the report's contents with their own client, Bassir Bayat, who is Sultan's brother and cares deeply about Sultan's health. (*See* Guardian Response at 1.) The report has already been filed under seal, which adequately shields it from public disclosure.

Defendants' reliance on Judge Barksdale's prior order (Doc. 51) denying Plaintiff's request for production of Sultan's health records is misplaced. The Court did not deny that request on relevance grounds; Judge Barksdale expressly acknowledged that Sultan's health "could be relevant to his ability to manage the property" and "could certainly be relevant to his ability to sit for a deposition." (Dkt. 72-1, Hr'g Tr. at 47.) Rather, at that early stage, the Court directed Plaintiff to notice Sultan's deposition and placed the burden on Defendants to "prove that up" if they wished to prevent it. (*Id.* at 48.) Defendants have now triggered

11

precisely that scenario by filing this Motion on medical grounds, yet they have not carried the burden the Court placed on them. The prior order provides no basis for shielding the report from Plaintiff through an "attorneys' eyes only" designation—if anything, it underscores that limited discovery into Sultan's health is warranted.

Defendants also articulate no plausible justification for why Plaintiff's counsel should be severely limited in their ability to discuss the contents of the report. Defendants' own filings—this Motion and the simultaneously filed Motion to Appoint a Guardian Ad Litem—already disclose the alleged premises for those motions to the Court and to Plaintiff: namely, that Sultan purportedly suffered a second stroke and is in such poor health that he cannot be deposed. (*See* Dkt. 62; Dkt. 60 (Guardian Motion).) Defendants' Motion quotes portions of the report unredacted and in the public record. Having placed the substance of Dr. Alsamman's report squarely before the Court and the parties through their own motion papers, Defendants offer no explanation as to how, under these circumstances, there ought to be draconian restrictions placed on the ability of Plaintiff's counsel to use, share, or discuss the note itself outside of the public view.

The confidentiality agreement provides that material designated as "Confidential" may be shared with the parties, their experts, and certain other enumerated categories of individuals, while shielding sensitive information from the public record. (Dkt. 62-5, Confidentiality Agreement § 8.) Maintaining the "attorneys' eyes only" designation imposes unnecessary administrative burdens on these proceedings. It would ostensibly require clearing deposition and court rooms

when the report's contents are discussed, and it significantly complicates the preparation and filing of court papers that reference or rely upon the report—all without any articulated justification. A "Confidential" designation would adequately protect Sultan's privacy while permitting Plaintiff's counsel to consult with their client and any medical experts necessary to meaningfully evaluate the claims made in the report, without imposing these unnecessary procedural obstacles. Plaintiff respectfully requests that the Court reclassify the report from "Attorneys' Eyes Only" to "Confidential" under the parties' agreement.

## CONCLUSION

For the foregoing reasons, and the reasons set forth in Plaintiff's simultaneously filed Guardian Response, Plaintiff respectfully requests that the Court deny the Motion. Sultan's deposition is critical to this case, as Judge Barksdale recognized in instruction Plaintiff to notice it. (*Id.* at 49.) The record before the Court does not support the extraordinary relief of barring the deposition entirely, and the attorneys' eyes only designation should not be upheld. In the alternative, the Court should defer ruling on the protective order until Plaintiff has had the opportunity to depose Dr. Alsamman, obtain pertinent medical records, and conduct an independent medical examination of Sultan pursuant to Federal Rule of Civil Procedure 35.

Dated: March 30, 2026.

HOLLAND & KNIGHT LLP

*/s/Patrick B. Reagin*
J. Allen Maines (FBN 226270)

13

allen.maines@hklaw.com
Patrick B. Reagin (pro hac vice)
patrick.reagin@hklaw.com
1180 West Peachtree St. NW, Suite 1800
Atlanta, Georgia 30309
Telephone:  (404) 817-8500
Facsimile:   (404) 881-0470

Michael M. Gropper (FBN 105959)
michael.gropper@hklaw.com
Wesley J. Martinez (FBN 1013924)
wesley.martinez@hklaw.com
50 North Laura Street, Suite 3900
Jacksonville, Florida 32202
Telephone:  (904) 353-2000
Facsimile:   (904) 358-1872

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on March 30, 2026, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will automatically send e-mail notification of such filing to counsel of record.

*/s/ Patrick B. Reagin*
Patrick B. Reagin
*Counsel for Plaintiff*